M. & M. Corporation v. Commissioner.
M. & M. Corp. v. Commissioner
Docket No. 70552.
United States Tax Court
T.C. Memo 1959-217; 1959 Tax Ct. Memo LEXIS 30; 18 T.C.M. (CCH) 1051; T.C.M. (RIA) 59217; November 19, 1959
*30 1. Held, certain promissory notes issued by petitioner to two of its stockholders for cash paid in by the stockholders, when considered in light of all the evidence, constituted a bona fide indebtedness, and interest paid with respect thereto is deductible. 2. Held, respondent's disallowance of a part of the deduction for taxes claimed by petitioner on its return is sustained for lack of proof. Norman Nadel, Esq., 1407 Broadway, New York, N. Y., and Benjamin Nadel, C.P.A., for the petitioner. William B. Riley, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the taxable year ended October 31, 1954, in the amount of $6,628.90. The issues involved are: (1) Whether respondent *31 erred in disallowing $12,000 deducted by petitioner on its return as interest paid on indebtedness; and (2) whether respondent erred in disallowing $456 deducted by petitioner on its return as Pennsylvania loans tax. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner was organized under the laws of the Commonwealth of Pennsylvania and commenced business on March 1, 1944. Its principal office is in Bloomsburg, Pennsylvania. It filed its Federal corporation income tax return for the fiscal year ended October 31, 1954, on an accrual basis of accounting with the director of internal revenue in Scranton, Pennsylvania. In its return, petitioner claimed deductions for interest and taxes. Of the amounts claimed, the respondent disallowed $12,000 claimed as a deduction for interest and $456 claimed as a deduction for taxes. The respondent explained his disallowances in a statement attached to the deficiency notice as follows: "(a) * * * $12,000.00 paid to Louise Mitrani and Claire Mitrani is disallowed because such payments do not represent interest on indebtedness within the meaning of Section 23(b) of the Internal Revenue *32 Code of 1939. * * *
"(c) The amount of $456.00 claimed as a deduction for corporate loans tax is disallowed as it is not a deductible expense of M. & M. Corporation." The principal business of petitioner since the date of its organization has been the ownership of real estate, consisting primarily of factory buildings and sites, and machinery and equipment for use in manufacturing, which it leased to related companies engaged in various phases of the manufacture and sale of ladies' undergarments. The related group of companies which leases manufacturing facilities from petitioner together perform as integrated manufacturing process in which raw yarns are knitted into cloth, cut and sewed into garments and sold. The capital stock of petitioner has at all times been owned by various members of the Mitrani family, among whom are Solomon Mitrani and Marco Mitrani, who are brothers, and Louise Mitrani, the wife of Marco, and Claire Mitrani, the widow of Solomon. Solomon died on December 20, 1951. The aforementioned members of the Mitrani family are sometimes referred to by their respective first names only. On or about August 29, 1939, Solomon and Marco as partners became *33 engaged in the manufacture of ladies' undergarments under the firm name of Milco Undergarment Company. At that time, Louise and Claire as partners commenced business under the name of M. & M. Realty Company, hereinafter sometimes referred to as the realty partnership. The realty partnership owned some of the real estate and machinery used by the Milco Undergarment Company. In February 1944, Solomon and Marco each made a cash gift of $50,000 to their respective wives. A limited partnership was formed as of February 26, 1944, consisting of Solomon and Marco as general partners, each with a capital investment of $50,000, and Claire and Louise as limited partners, each with a capital investment of the $50,000 given them by their respective husbands. The old partnership of Solomon and Marco was dissolved and the limited partnership thereafter engaged in the manufacture of ladies' undergarments until January 31, 1946, under the firm name of Milco Undergarment Company, hereinafter sometimes referred to as the Milco partnership. Petitioner was organized on or about March 1, 1944, and all of the real estate and machinery formerly owned by Solomon and Marco as partners and by the realty *34 partnership was transferred to petitioner in exchange for its capital stock. Thereafter, petitioner operated primarily as the holding company of the manufacturing facilities and the Milco partnership continued as an operating company, leasing all its manufacturing facilities from petitioner. The opening balance sheet of petitioner, as of March 1, 1944, reflected total assets of $129,600; capital stock issued and outstanding, $64,800; and paid-in surplus of $64,800. Petitioner's authorized capital stock consisted of 1,000 shares of common stock of the par value of $100 per share. At the time of organization it issued 648 of these shares as follows: 181 1/2 shares each to Marco and Solomon, and 142 1/2 shares each to Louise and Claire. On or about January 31, 1946, the assets and liabilities of the Milco partnership were transferred to Milco Undergarment Co., Inc., hereinafter referred to as Milco, which thereafter succeeded to and continued the business formerly conducted by the Milco partnership and continued at all times to lease its manufacturing facilities from petitioner. The capital stock of Milco was issued as follows: Class A
Class B
6% Cumulative
Common Voting
Common Non-
Nonvoting Pre-
Stockholder $100 Par
voting $100 Par
ferred $100 Par
Marco Mitrani
50
445
Solomon Mitrani
50
445
Louise Mitrani
1,000
Claire Mitrani
1,000
Jacques Mitrani
10
Total Shares
100
900
2,000
*35 On January 31, 1951, the preferred stock of Milco was redeemed and retired by payment of $100,000 each to Claire and Louise. On the same date Claire and Louise each paid by personal check to petitioner the $100,000 that each had received from Milco, and petitioner issued two promissory notes dated January 31, 1951, one payable to the order of Claire and one payable to the order of Louise, each note containing a promise to pay $100,000 6 months from the date thereof with interest at 6 per cent per annum. The notes were authorized by the board of directors, and were signed by "M. & M. Corporation, M. Mitrani, President." The board of directors consisted of Solomon, Marco, Claire and Louise. At the annual meeting of the board held on March 2, 1951, the board ratified and approved all the acts and transactions of the officers and directors since the last annual meeting of the stockholders. On or about July 31, 1951, the word "Cancelled" was written across the face of each of the above-described notes and two new notes in the same form, each dated July 31, 1951, were issued by the petitioner, one payable to the order of Claire and one payable to the order of Louise. In like manner, *36 similar renewals were made upon the due dates of the notes, the last renewal being January 31, 1959, due in one year. Petitioner has never made any payment in reduction of the principal amount of the alleged indebtedness indicated by any of the above-described notes. Since January 31, 1951, petitioner has paid or accrued quarterly amounts shown on its books as "interest" due at 6 per cent per annum with respect to the above-described notes, and such amounts have been paid by petitioner to Claire and Louise. In its Federal income tax return for its fiscal year ended October 31, 1951, petitioner claimed a deduction for interest in the aggregate amount of $9,000 and in its Federal income tax returns filed for the fiscal years ended October 31, 1952, to 1958, inclusive, petitioner claimed each year a deduction for interest in the aggregate amount of $12,000, which deductions represent the alleged interest paid or accrued with respect to the above-described notes. Late in November 1950 when the directors of Milco determined to redeem the preferred stock of Milco, it was contemplated that the $200,000 to be received by Claire and Louise upon such redemption would be paid by them to *37 petitioner for use in the expansion of petitioner's facilities and for other corporate purposes. The certificate of amendment to Milco's certificate of incorporation, to permit elimination of the preferred stock of Milco from its authorized capital stock, was executed on December 28, 1950. On January 16, 1954, the board of directors of petitioner held a special meeting authorizing petitioner to obtain a loan from Girard Trust Corn Exchange Bank of Philadelphia, Pennsylvania, hereinafter sometimes referred to as Girard Trust. The purpose of this loan was to help finance the construction of a dye house and finishing plant to be leased to Milco for a term of 6 years commencing November 1, 1954, at an annual lease rental of $60,000. Pursuant to the authorization reflected in the minutes of the special meeting of the directors held on January 16, 1954, petitioner entered into a loan agreement with Girard Trust under date of March 1, 1954. Under the terms of the loan agreement, petitioner obtained a so-called "construction loan" of $250,000 to be advanced to petitioner from time to time for the purpose of constructing on land owned by petitioner, and equipping, the dye house and finishing *38 plant to be leased to Milco, the completion of which was required not later than November 1, 1954, and a so-called "term loan" of $300,000, to be made between the date of completion of the dye house and November 1, 1954. The proceeds of the term loan were required to be used first to repay the construction loan, second to repay any other bank loans, and third, for general corporate purposes. Petitioner fully complied with all the conditions required of it in the loan agreement. Under the many provisions of the March 1, 1954, loan agreement with Girard Trust, referred to therein as the "Bank," was a covenant by petitioner reading as follows: "4. It [Petitioner, the 'Borrower'] will cause Mrs. Louise Mitrani and Mrs. Claire Mitrani to enter into subordination agreements with Borrower and Bank with respect to the advances of One Hundred Thousand Dollars ($100,000) each which they have respectively made to Borrower." In accordance with the above-mentioned covenant, Louise and Claire each entered into a "Subordination Agreement" dated January 16, 1954, wherein Louise and Claire each agreed to subordinate all of their claims arising out of the advances they had made to petitioner *39 on January 31, 1951, to all liabilities owing by petitioner to the bank. Petitioner was also required under the terms of the March 1, 1954, loan agreement to assign to Girard Trust the lease to be executed between it and Milco on the building to be constructed by November 1, 1954. The lease and the assignment were fully executed. Pursuant to the so-called "construction loan" provision of the March 1, 1954, loan agreement, petitioner received funds from Girard Trust totaling $250,000 between March 16 and September 2, 1954, and repaid the entire amount thereof on November 1, 1954. Petitioner, under date of November 1, 1954, executed its note, shown on its face as subject to the provisions of the March 1, 1954, loan agreement, as further evidence of its indebtedness for the "term loan" in the amount of $300,000, which was received on the same date. The term loan was repayable in 20 quarterly installments of $15,000 each, with interest payable quarterly on the unpaid principal at 4 1/2 per cent per annum, the first installment being due February 1, 1955. Petitioner has never paid a dividend on common stock. The only changes in stock ownership in petitioner or Milco from the date *40 of the organization of each to the year 1956 were those changes incident to the above-described redemption of the Milco preferred stock on January 31, 1951, the transfer of the stock of Solomon to his estate following his death, and the gift by Claire of 10 shares of stock in petitioner to each of her two children, which gifts were made during 1955. Among the current liabilities appearing on petitioner's balance sheets as of October 31, 1951, to October 31, 1958, inclusive, appeared the following: "Notes Payable - Claire & Louise $200,000." Petitioner's net income after taxes for the 8-month period ended October 31, 1950, and for each of the fiscal years 1951 through 1958 was as follows: Net Income After
Fiscal Year
Taxes (cents omitted)
1950
$12,741
1951
19,384
1952
25,791
1953
21,268
1954
17,529
1955
29,795
1956
9,759
1957
42,630
1958
59,105
The notes given by petitioner to Claire and Louise on January 31, 1951, in return for the $200,000 paid to petitioner by Claire and Louise, and all subsequent renewals of the notes, constituted a bona fide indebtedness of petitioner to the noteholders. The payment of $12,000 by petitioner to Claire *41 and Louise during the taxable year ended October 31, 1954, was a payment by petitioner of genuine interest on genuine indebtedness. Opinion In view of our finding that the $12,000 paid by petitioner to Claire and Louise during the taxable year in question was a payment of genuine interest on genuine indebtedness, it follows that petitioner is entitled to deduct the amount as "interest paid or accrued within the taxable year on indebtedness" as provided in section 23(b) of the Internal Revenue Code of 1939. [1]
We do not agree with the respondent that the cash advances of $200,000 made by Claire and Louise should in substance be regarded as a contribution of capital rather than a bona fide loan. In our opinion, the evidentiary facts and all inferences to be derived therefrom show that the advances were intended as a loan and were in fact a loan. The notes given for the advances and all renewals thereof were negotiable in form. They bore interest at 6 per cent per annum *42 and had a fixed maturity date. Petitioner treated the notes and all renewals thereof on its books and income tax returns as indebtedness rather than capital. In 1954, when petitioner borrowed the $300,000 from Girard Trust, the latter regarded the notes to Claire and Louise as outstanding indebtedness of petitioner and insisted as a prerequisite to the granting of the $300,000 loan that Claire and Louise enter into subordination agreements with petitioner and Girard Trust, subordinating their claims to all liabilities of petitioner to the bank. Whether advances to a corporation are contributions to capital or loans is essentially one of fact. Matthiessen v. Commissioner, 194 F. 2d 659 (C.A. 2, 1952), affirming 16 T.C. 781; O'Neill v. Commissioner, - F. 2d - (C.A. 9, Oct. 13, 1959). Each case must be decided upon its own facts and the inferences to be drawn therefrom. Gooding Amusement Co. v. Commissioner, 236 F. 2d 159 (C.A. 6, 1956), affirming 23 T.C. 408. No one fact is controlling. John Kelley Co. v. Commissioner, 326 U.S. 521. The substance rather than the form of the transaction controls. Gregory v. Helvering, 293 U.S. 465; *43 Commissioner v. Court Holding Co., 324 U.S. 331; Gilbert v. Commissioner, 262 F. 2d 512 (C.A. 2, 1959), affirming Supplemental Memorandum Opinion of this Court [17 TCM 29, T.C. memo. 1958-8]. In the instant case, we think substance and form coincide. We think all the objective acts that were done show that in substance Claire and Louise intended to loan petitioner the $200,000 in question and petitioner in substance intended to borrow the money so loaned. The fact that no security was given by petitioner or insisted upon by Claire and Louise is not controlling, Country Club Estates, Inc., 22 T.C. 1283, 1292. This is not a case of a corporation with a thin capitalization, and is not within the ambit of such cases cited by respondent as R. M. Gunn, 25 T.C. 424, affirmed per curiam sub nom. Perrault v. Commissioner, 244 F. 2d 408 (C.A. 10, 1957); Emanuel N. (Manny) Kolkey, 27 T.C. 37, affd. 254 F. 2d 51 (C.A. 7, 1958); and U.S. Asiatic Co., 30 T.C. 1373. In the latter case the ratio of the claimed indebtedness to the corporation's capital investment ranged from 64 *44 to 1 at the end of the year 1948 to 71 to 1 at the end of the years 1950 and 1951. Upon those facts we held that the corporation was a thin corporation; that its capital structure was wholly unrealistic; and that the claimed indebtedness there in substance "represented substantially all the risk capital employed in its business." Such is not the situation here where the ratio of indebtedness to capital was about 2 to 3 and we may well say, as the Supreme Court said in John Kelley Co. v. Commissioner, supra: "As material amounts of capital were invested in stock, we need not consider the effect of extreme situations such as nominal stock investments and an obviously excessive debt structure." As indicated in our findings, petitioner borrowed funds from banks and individuals, as well as from Claire and Louise. The assistant treasurer and loan officer of Girard Trust with whom petitioner negotiated the $300,000 loan in 1954, testified at the hearing that if petitioner had approached the bank for the $200,000 loan instead of borrowing it from Claire and Louise he would have recommended that the loan be made. The respondent also contends that the subordination agreements *45 signed by Claire and Louise in 1954 indicate that the $200,000 here in question should in substance be regarded as risk capital rather than indebtedness. This again is but one of the criteria to be considered. In O.P.P. Holding Corporation, 30 B.T.A. 337, affd. 76 F. 2d 11 (C.A. 2, 1935), we said: "It is true that the debenture bonds are subordinate to the claims of all creditors of the corporation, but this does not mean that the holder of a debenture bond is not also a creditor." In affirming our decision, the Second Circuit also said: "We do not think it fatal to the debenture holder's status as a creditor that his claim is subordinated to those of general creditors. The fact that ultimately he must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder. * * *" To the same effect see John Kelley Co., 1 T.C. 457, 462, reversed by C.A. 7 at 146 F. 2d 466, which in turn was reversed by the Supreme Court at 326 U.S. 521, supra. The respondent also contends that some significance should be placed on the fact that Claire and Louise were preferred *46 stockholders of Milco; that such preferred stock was redeemed and retired by Milco by payment of $100,000 each to Claire and Louise; and that on the same day Claire and Louise paid the $200,000 to petitioner in exchange for the promissory notes. The respondent argues that in substance Claire and Louise merely changed their preferred stockholdings in Milco to preferred stockholdings in petitioner. This is not in accord with the facts. Petitioner at no time ever issued any preferred stock. It issued notes in consideration for the $200,000 paid to it by Claire and Louise, and this action was approved by its board of directors. Again, this phase of the case is similar to a somewhat like situation in John Kelley Co. v. Commissioner, supra, where the greater part of the debentures there in question were issued in exchange for the original preferred stock of the John Kelley Company itself and, notwithstanding such fact, the Supreme Court held the debentures to be indebtedness rather than capital. Taking into consideration the entire record, we are satisfied that the promissory notes were not a sham and that they represented in substance as well as in form a bona fide indebtedness *47 of petitioner. John Kelley Co. v. Commissioner, supra; Leach Corporation, 30 T.C. 563; Sheldon Tauber, 24 T.C. 179. We hold that petitioner is entitled to deduct the $12,000 claimed as interest paid on indebtedness. As to the second issue, we sustain the respondent's determination for lack of proof. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(b) Interest. - All interest paid or accrued within the taxable year on indebtedness * * *.↩