**MATTHIESSEN et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 116, Docket 22142.

United States Court of Appeals Second Circuit.

Argued Jan. 15, 1952.

Decided Feb. 15, 1952.

660

Donald M. Dunn, James D. Ewing and Clyde W. Sorrell, all of New York City, for petitioners.

Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott and Carolyn R. Just, Sp. Assts. to Atty. Gen., Chas. Oliphant, Washington, D. C., Theron L. Caudle, Asst. Atty. Gen., for respondent.

Before AUGUSTUS N. HAND and CLARK, Circuit judges, and BRENNAN, District Judge.

BRENNAN, District Judge.

This appeal challenges a decision of the Tax Court, 16 T.C. 781, which upheld the Commissioner's determination of a deficiency of about $34,000 in the petitioners' income tax liability. The litigation arises by reason of the re-audit of petitioners' joint tax return for the year 1941. It was held that corporate obligations represented by promissory notes payable to the petitioners, who were husband and wife and the sole stockholders of the corporation, represented contributions to capital rather than loans and, therefore, not deductible as bad debts in the petitioners' income tax return.

The facts are not in dispute. They appear in the stipulation, record, findings and opinion below, and will be summarily referred to here.

Erard A. Matthiessen was an architect, and on January 11, 1934, he organized under the laws of the State of New York, a corporation known as "Tiffany Park, Inc." to transact a general real estate and brokerage business. Its purpose was to keep separate his professional activities and the real estate business which he obviously controlled and directed. He was at all times an officer and a director of the corporation. The corporate venture was not successful, and the corporation itself was dissolved on December 29, 1941. From the time of its organization he intermittently made cash advancements to the corporation greatly exceeding in amount its invested capital. At the time of the dissolution of the corporation the unpaid balance of such advances totalled about $38,000.

Mrs. Matthiessen was involved in a single transaction. She entered into a contract whereby she agreed to exchange certain real estate owned by her for two parcels owned by a stranger corporation. On August 29, 1940, she assigned her interest in that contract to Tiffany Park, Inc. She received for her interest in the so-called "transfer contract" sixty shares of the capital stock of Tiffany Park, Inc. and a prom-

issory note for $39,000. She thereupon became the president and a director of the corporation.

The authorized capital of Tiffany Park, Inc. was $25,000, consisting of two hundred and fifty shares of the par value of one hundred dollars each. Erard Matthiessen conveyed certain unimproved real estate to the corporation on its organization, and there was issued to him sixty shares of said stock. The capital structure remained substantially unchanged until Mrs. Matthiessen became a stockholder, as stated above, on August 29, 1940. The corporation may be considered for tax purposes as one whose stock was closely held and controlled by either or both of the petitioners.

Upon liquidation of the corporation, and in accordance with a plan approved by the stockholders, Mr. and Mrs. Matthiessen received a comparatively small liquidating dividend, and in their joint income tax return for the year 1941, Mr. Matthiessen claimed a bad debt deduction in the amount of $35,235.78, by reason of the transactions referred to above, and Mrs. Matthiessen claimed a similar deduction in the amount of $36,268.38. Upon re-audit it was determined that the claimed deductions should be disallowed, and the monies referred to therein were considered as contributions to capital, rather than as loans, and were treated accordingly.

[1-3] The question as to whether or not advances to a corporation by the principal stockholder or stockholders are actually contributions to capital or loans is not new. It is essentially a question of fact upon which the taxpayer has the burden of establishing his right to such deduction. White v. U. S., 305 U.S. 281 at page 294, 59 S.Ct. 179, 83 L.Ed. 172. The status and nature of the transactions when they occurred is the ultimate question to be decided, and the determinative intent, Wilshire & Western Sandwiches, Inc., v. Commissioner, 9 Cir., 175 F.2d 718, is arrived at by the consideration of relevant facts. "Bookkeeping, form, and the parties' expression of intent or character, the expectation of repayment, the relation of advances to stockholdings, and the adequacy of the corporate capital previously invested are among circumstances properly to be considered, for the parties' formal designation of the advances are not conclusive * * *". Schnitzer v. Commissioner, 13 T.C. 43 at page 60, affirmed 9 Cir., 183 F.2d 70, certiorari denied, 340 U.S. 911, 71 S.Ct. 291, 95 L.Ed. 658. Such considerations afford a sound basis for the decision here. Dobkin v. Commissioner, 15 T.C. 31; affirmed Second Circuit 192 F.2d 392; Janeway v. Commissioner, 2 Cir., 147 F.2d 602.

The lower court did not separately discuss the claims of the husband or wife, or pass upon them as separate items. We are not to infer, however, that they did not receive the required consideration. In fact, it appears that by adopting the separate determinations of the Commissioner in its findings of fact, it necessarily follows that the lower court gave each claim separate consideration.

The relevant facts here as they are detailed in the record and outlined above would seem clearly to warrant the decision below insofar as the deductions claimed by the husband are concerned, and no further discussion is necessary.

It is apparent that Mrs. Matthiessen relied upon her husband's knowledge and business experience in the consummation of the one transaction in which she was involved. She accepted its benefits, and under the circumstances here the knowledge of her husband as to the financial affairs of Tiffany Park, Inc. may be considered as her own. She knew that by virtue of the assignment she was to obtain the same status in the corporation as that held by her husband. She knew that the corporation had not been successful, but she accepted its unsecured promise to pay. As far as the record indicates she made no attempt to enforce the promissory note either as to its interest or payment terms.

The questions involved here are essentially factual. Their determination and application involve no extension of the existing law. A fair reading of the findings and opinion below makes it clear that, however imperfectly expressed, the lower court

662

intended and did hold that the advancements made by each of the parties were intended as money or monies-worth investments risked upon the success or failure of the corporation. Such findings were not clearly erroneous. Sec. 1141 (a), Internal Revenue Code, as amended 26 U.S.C.A. § 1141(a). The following quotation taken from Burford-Toothaker Tractor Co. v. Commissioner, 5 Cir., 192 F.2d 633, at page 635, is applicable here: " 'To draw inferences, to weigh the evidence and to declare the result was the function of the Board (now the Tax Court)'. Helvering v. National Grocery Co., 304 U.S. 282, 295, 58 S.Ct. 932, 938, 82 L.Ed. 1346."

Affirmed.