OPINION. The Toni Stock. Rice, Judge: The effect of the respondent’s allegation that the fair market value of the Toni shares on the date they were purchased was $557.12 each, rather than $2,000 as originally determined in the deficiency notice, is to reduce the amount taxable to petitioner as compensation in 1947 and also to reduce the basis of such shares and thereby increase the amount of gain which petitioner realized in 1948 on the sale of the shares. The underlying theory of respondent’s allegation that the fair market value of the shares was $557.12 each, their book value on March 31, 1947, is that the provisions of the option under which petitioner purchased the shares were so restrictive as to preclude any higher fair market value on that date. Petitioner conceded the correctness of respondent’s original determination, and argues that the lower fair market value has not been proved. We agree with the respondent that the value of the shares on the date they were purchased could not have exceeded $557.12. The shares for a period of 5% years could not have been sold or pledged without the written consent of the vendors. Should petitioner have terminated his employment with Toni, or died, or become bankrupt, or tried to dispose of the shares, the vendors had the right to repurchase them at their book value on the last day of the month immediately preceding such an event or for $333.33, whichever was greater. Since the respondent claims no lesser amount but alleges that $557.12 per share should be used, we conclude that such amount is the basis for computing the long-term gain which petitioner realized in 1948, and for computing the amount of compensation which he realized upon exercise of the option in 1947. Since the reduction of the amount of compensation which respondent originally determined petitioner received in 1947 will eliminate all taxable income for that year, the parties have agreed that our holding with respect to the Toni shares makes unnecessary consideration of the second issue raised herein with respect to a net loss carry-back of $73,228.40 from the year 1949 to the year 1947. The Development of “Korvo.” The petitioners claimed a deduction of $168,196.83 on their return for 1948 on the theory that the advances by petitioner to Phil Kalech, Inc., were loans which became worthless in that year. They pursue that argument here. While they dispute the respondent’s allowance of a long-term loss of $25,000 based on his determination that the initial $50,000 advance to the corporation was a capital investment, they argue that should we find that all advances to the corporation were capital investments therein, the net result would be the same as if we held the advances to be loans. This, they say, is true because the return by the corporation to petitioner of a part of his capital investment during 1948 should be applied to the first sums advanced by him which would mean that all unreturned advances were made within 6 months of the time when they became worthless; and, hence, any loss would be a short-term capital loss. We have found that $105,723.16, which was the net amount advanced by petitioner from the inception of the corporation through November 30, 1948, was his net capital investment therein. The facts here differ in no material respect from those before us in a number of similar cases wherein we have held advances to newly formed corporations in the guise of loans, where there was little or no paid-in capital, were, in fact, capital contributions. Hilbert L. Bair, 16 T. C. 90 (1951), affd. 199 F. 2d 589 (C. A. 2, 1952) ; Erard A. Matthiessen, 16 T. C. 781 (1951), affd. 194 F. 2d 659 (C. A. 2, 1952) ; Isidor Dobkin, 15 T. C. 31 (1950), affd. 192 F. 2d 392 (C. A. 2, 1951); Sam Schnitzer, 13 T. C. 43 (1949), affd. 183 F. 2d 70 (C. A. 9, 1950), certiorari denied 340 U. S. 911 (1951) ; Joseph B. Thomas, 2 T. C. 193 (1943); and Edward G. Janeway, 2 T. C. 197 (1943), affd. 147 F. 2d 602 (C. A. 2, 1945). We further found that such capital investment became worthless in 1948. That fact is evident even though petitioner received assets in excess of liabilities upon the corporation’s final dissolution. Assets exceeded liabilities at that time only because of the $100,000 advance which petitioner made on December 23 after dissolution had been agreed upon. Petitioner claimed, first, that that advance, like all others, was a loan and, in the alternative, that it was a further capital investment. We agree with the respondent that the advance was not a loan because petitioner knew at the time that the corporation was insolvent, was going out of business, and that repayment would never be made. Ray Crowder, 19 T. C. 329 (1952). We are further satisfied that this payment, unlike all other sums advanced, was not a capital contribution on which loss may be recognized. The purpose which motivated petitioner’s advance was his desire to receive the assets of the corporation intact, and to continue, as an individual, the business of developing Korvo. The net amount which petitioner paid, in order to receive the assets, was actually $11,375.05. This is obvious from an examination of the balance sheet of the corporation immediately prior to its dissolution and an examination of the books of the Korvo Company on January 1, 1949. The assets and the liabilities shown in both instances are identical except that the books of the Korvo Company do not sIlow the $88,624.95 in cash which petitioner received, along with the other assets of the corporation. The effect of the $100,000 payment was to enable the corporation to show an excess of assets over liabilities, exclusive of any advances by petitioner, immediately prior to dissolution. Thus, only the amount of $11,375.05 was actually paid by petitioner; and being a payment for the assets and right to operate the business as a sole proprietorship, it is not one on which loss may be recognized in 1948. Ruth M. Cullen, 14 T. C. 368 (1950). See Kimbell-Diamond Milling Co., 14 T. C. 74 (1950), affd. 187 F. 2d 718 (C. A. 5, 1951), certiorari denied 342 U. S. 827 (1951). In holding that petitioner is entitled to a capital loss in the amount of $105,723.16, we have not overlooked respondent’s argument that the books of the corporation do not show the Korvo formula as an asset, nor does petitioner assign any value to it. We agree with respondent that the formula had a value. He contends that such value was at least $45,000. Even if this were true, it would not result in the corporation having an excess of assets over liabilities on the date it was dissolved, because the real assets of the corporation totaled only $91,782.52 on that date, whereas the liabilities were $142,-881.14; and the corporation ivould still have been insolvent even if the formula had been included among its assets at $45,000. ^Recognizing that petitioner made a capital contribution to the corporation of $163,146.59, of which $57,423.43 was returned to him and that he sustained a capital loss of $105,723.16 in 1948, raises the question of whether the full amount of such loss is a short-term capital loss or whether some part thereof is a long-term capital loss. Section 23 (g) of the 1939 Code[1] provides a capital loss allowance for securities becoming worthless during the taxable year and such loss is considered as one arising from the sale or exchange of such securities on the last day of the taxable year. Securities, as defined by that section, include not only actual shares of a corporation but the “rights to subscribe for or to receive such shares,” which is what petitioner here had by virtue of his advances to the corporation. Joseph B. Thomas, supra; Edward G. Janeway, supra. The loss on his capital investment is deemed, by statute, to have occurred on December 31,1948. Since that loss is also considered to have arisen from, the sale or exchange of the “securities,” we think the so-called “first-in, first-out” rule,[2] pertaining to the sale or exchange of unidentified lots of shares, must be invoked here. See Courtenay D. Allington, 31 B. T. A. 421 (1934). In applying the first-in, first-out rule in a computation to determine the amount of the short- or long-term loss sustained by petitioner, the amounts returned by the corporation to him aggregating $57,423.43 must be applied against the initial advances made by petitioner to the corporation in order to determine what portion of his total advances were made on or after July 1,1948. We know that the initial $50,000 advanced by him on May 12 of that year, which the respondent concedes is a capital contribution, will be eliminated in the computation of the loss under the first-in, first-out rule. With respect to the remaining $7,423.43 returned to the petitioner by the corporation, we do not know whether that or a larger amount was advanced to the corporation prior to July 1. The record shows only that between May 3 and August 30, 1948, petitioner made payments of $18,103.18 in behalf of the corporation. If the remaining $7,423.43 of the amount returned by the corporation exactly equaled the sums advanced prior to July 1, the total loss of $105,723.16 would be a short-term capital loss. In any event, the parties can make the necessary adjustment, pursuant to our holding here, in a Bule 50 computation. Loan to Lowe Radio Features, Inc. The respondent based his disallowance of the $10,000 nonbusiness bad-debt loss claimed by petitioner with respect to advances to Lowe Badio Features, Inc., on the ground that petitioner had not proved the loan to be worthless. We have found as a fact that the loan was worthless in 1948, and petitioner is entitled to a nonbusiness bad-debt deduction therefor on his return for that year. Beviewed by the Court. Decisions will be entered wider Rule 50. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions : ******* (g) Capital Losses.— (1) Limitation. — Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. (2) Securities becoming worthless. — If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. (3) Definition of securities. — As used in this paragraph (2) of subsection the term “securities” means (A), shares of stock in a corporation, and (B) rights to subscribe for or to receive such shares. Regulations 111. Sec. 29.22 (a)-8. Sale op Stock and Rights. — If shares of stock In a corporation are sold from lots purchased at different dates or at different prices and the identity of the lots cannot be determined, the stock sold shall be charged against the earliest purchases of such stock. * * *