J. S. Biritz Construction Co. v. Commissioner. Joseph S. Biritz and Dorothy Biritz v. Commissioner.
J. S. Biritz Constr. Co. v. Commissioner
Docket Nos. 1054-65, 1055-65.
United States Tax Court
T.C. Memo 1966-227; 1966 Tax Ct. Memo LEXIS 56; 25 T.C.M. (CCH) 1175; T.C.M. (RIA) 66227; October 18, 1966
*56 Deductions: Interest expense v. dividend distribution: Advances by shareholder to corporation. - Advances made by a shareholder to his corporation as a purported loan were not entitled to interest deductions by the corporation. The shareholder (taxpayer) who held 996 shares of the 1000 outstanding shares failed to prove that the payment was a dividend. Oliver W. Schneider and Donald H. Whaley, 7701 Forsyth, Clayton, Mo., for the petitioners. Sheldon Chertow, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in the income tax of petitioner J. S. Biritz Construction Co. in the amount of $371.76 for each of its taxable years ended February 28, 1959, and February 29, 1960, and *57 determined a deficiency in the income tax of petitioners Joseph S. Biritz and Dorothy Biritz in the amount of $4,863.65 for the calendar year 1960. The issues for decision are: (1) Whether deductions claimed by J. S. Biritz Construction Co. in the amount of $1,239.20 for each of its fiscal years here involved as interest expense are allowable as such or are not properly deductible because of being dividend distributions. (2) Whether payments by J. S. Biritz Construction Co. to Joseph S. Biritz in the year 1960 in the amount of $1,239.20 and $20,653.27 were essentially equivalent to dividends so as to be taxable to petitioners to the extent of the earnings and profits of J. S. Biritz Construction Co. available for distribution. Findings of Fact Some of the facts have been stipulated and are found accordingly. J. S. Biritz Construction Co. (hereinafter referred to as Biritz Construction) is a corporation, incorporated under the laws of the State of Missouri on February 23, 1954. It filed its corporate income tax returns for the fiscal years ended February 28, 1959 and February 29, 1960, with the district director of internal revenue, St. Louis, Missouri. Joseph S. Biritz *58 and Dorothy Biritz, husband and wife residing in St. Louis, Missouri, filed a joint Federal tax return for the calendar year 1960 with the district director of internal revenue at St. Louis, Missouri. Joseph S. Biritz (hereinafter referred to as petitioner) began working as a carpenter around 1934. In approximately 1938, he began, with another individual, to build homes for a realty company as a general contractor. He continued in this work until he went into the military service in 1943. During his military service from 1943 to 1945, he did some part-time carpentry work in the evenings and soon after his discharge from the service in 1945 resumed work with the individual he had started working with in 1938 in building homes as a general contractor for a realtor. About 1948 or 1949, the individual with whom petitioner had been working in the building of homes left the St. Louis area and petitioner continued to do general contractor work as a sole proprietor. As a sole proprietor, petitioner did carpentry and millwright work and general repairs such as room additions as well as building houses. Also, during the period he was operating as a sole proprietor, he built a medical building. *59 Petitioner is a registered architect, licensed in the State of Missouri. During the period petitioner was operating as a sole proprietor, he built some homes for individuals as well as for realtors. His building both for individuals and for realtors was generally done on lots owned by the person for whom he was building. A payment would be made to him before he commenced the work and progress payments were made as the work progressed. If he were doing a room addition or repair work, the same arrangement would be followed if the work were of an extensive nature, but where it was some minor repair he would bill for the work upon its completion. Occasionally he would do some work on the basis of the materials being supplied by the person for whom the building was being done, and he would be paid for the labor expended shortly after presentation of the bill therefor. Petitioner, when he operated as an individual, generally paid all his bills for supplies and material within 30 days after their receipt and generally paid the wages of the other carpenters he employed on a weekly basis. He usually paid subcontractors shortly after receipt of their bills. On November 21, 1952, petitioner *60 and his wife Dorothy Biritz (hereinafter referred to as Dorothy) acquired a tract of land containing 10.847 acres from Gibson Estates, Inc. for $21,386. During the period from November 21, 1952, to February 23, 1954, a total amount of $5,924.02 was spent by petitioner for surveying and plats of the land, grading, bringing water lines to the property, real estate taxes to St. Louis County and the city of Bellefontaine Neighbors, title insurance, and one year's public liability insurance. As of February 23, 1954, petitioner's land account for the 10.847 acre tract was in the amount of $27,310.02 consisting of $21,386 paid for the land plus $5,924.02 of payments as set forth above. Prior to February 23, 1954, petitioner had constructed no homes on lots that required any development or improvements such as sewers and streets. In 1945 shortly after he left the military service, he and another individual together had built two houses on already developed lots which they owned. Except for these two houses, petitioner's building had been done on lots owned by the person for whom he built the house. Prior to February 23, 1954, petitioner as an individual had built homes which sold, exclusive *61 of the lot, from a low of approximately $4,500 to a high of approximately $30,000. Before petitioner went into the military service in 1943, a friend of his had suggested that he should incorporate his business and later, after he came out of the service, an attorney made this same suggestion to him, stating as a reason that his liability would thereby be limited. After thinking over the idea, petitioner decided to incorporate solely for the reason of limiting his liability with respect to his business operations. On February 23, 1954, a Certificate of Incorporation of J. S. Biritz Construction Co. was issued by the Secretary of State of Missouri, reciting that articles of incorporation had been filed as required by law and that the amount of the "Authorized Shares of said corporation is 2,000 Common, $10.00 par value, TWENTY THOUSAND DOLLARS." Article eight of the articles of incorporation filed February 23, 1954, provides as follows: The corporation is formed for the following purposes: To carry on business as proprietors and operators of J. S. Biritz Construction Co., and business of a general building contractor, general construction, general architect and building plan *62 draftsman, general hauling and repair work, buying and selling of real property, making and arranging for real property loans, as well as other allied activities, and to engage in any other business or manufacture that may seem expedient. The following journal entry appears on page 1 of Biritz Construction's general journal: 1954
Mar. 1
Land
$27,310.02
Account Receivable-
St. Louis Co. Wa-
ter Co.
822.64
Incorporation Fee
125.00
1951 Chevrolet Auto
1,314.92
Tools and Equip-
ment
166.67
Truck 1952 Chevro-
let
851.58
Office Equipment
175.00
Accrued F.O.A.B. Tax
$ 36.46
Accrued Withholding Tax
76.10
Note Payable
20,653.27
Capital Stock
10,000.00
To record the assets received and the
liabilities assumed by J. S. Biritz
Const. Co., a corporation, from Mr.
J. S. Biritz, in payment for which the
J. S. Biritz Const. Co. gave its note in
the amount of $20,653.27, payable on
demand and bearing interest at the
rate of 6% per annum and issued 1,000
shares of capital stock, each share
having a par value of $10.00.
At all times material hereto 1,000 shares ( $10 par value) of Biritz *63 Construction stock have been issued and are outstanding. On March 3, 1954, 96 shares were issued to petitioner, 2 to Dorothy, and 2 to Dorothy's father. The two shares issued to Dorothy and two shares issued to her father were qualifying shares under Missouri law. On March 6, 1954, the first meeting of the shareholders of the corporation was held at which the three shareholders were present in person, the shareholders and number of shares being in accordance with the shares as issued on March 3, 1954. At this meeting petitioner, Dorothy, and Dorothy's father were elected the directors of the corporation. On March 6, 1954, immediately following the meeting of the stockholders, the first meeting of the Board of Directors of Biritz Construction was held, at which petitioner was elected president, Dorothy's father, vice president and Dorothy, secretary and treasurer. At this meeting attention was called to the fact that prior to the filing of the articles of incorporation, petitioner had subscribed to 96 shares of the corporate stock at an amount of $960, and Dorothy and her father had subscribed to 2 shares each at an amount of $20 each. Attention of the directors was drawn to the *64 fact that the filing of the articles of incorporation constituted acceptance by the corporation of all existing subscriptions to its shares and that it was up to the board of directors to determine the time and manner of payment for such subscriptions. The minutes recite that thereupon by motions made and seconded, the following resolutions were adopted: RESOLVED that the subscribers to shares of this corporation be and they are hereby requested to make full payment forthwith to the Treasurer of the corporation for their shares. FURTHER RESOLVED that the Treasurer be and he is hereby directed to give notice of this action of the Board of Directors to all subscribers. FURTHER RESOLVED that the shares subscribed for shall be issued for the consideration stated in the subscription agreement, and that when and as any subscriber shall make full payment to the Treasurer of this corporation for the shares subscribed by him in accordance with the Subscription Agreement heretofore accepted, the shares of said subscriber shall be deemed full paid and nonassessable. FURTHER RESOLVED that, when and as any subscriber shall make full payment for his shares to the Treasurer of this corporation, *65 the proper officers of this corporation, as provided in the By-Laws, shall execute and deliver to said subscriber a certificate or certificates representing said shares. The minutes then recited as follows: The next order of business was a proposal by Joseph S. Biritz to transfer certain assets of his individual proprietorship as a general contractor and architect to the corporation in exchange for the common capital stock of the corporation in a specified amount, and a negotiable demand note with interest at the rate of 6% per annum for the balance of the net assets. It was pointed out that the assets proposed to be transferred were particularly well suited to the uses and purposes of the corporation, that the corporation would require the acquisition of these assets from some source and that the Directors knew that the assets which Mr. Biritz proposed to transfer were of the value as stated in a balance sheet prepared by a Certified Public Accountant. One of the Directors further pointed out that the other shareholders of the corporation had by written instrument waived any pre-emptive rights they may have to any new issues of stock in the corporation at the present time. After *66 a thorough discussion of the matter; on motion duly made, seconded and unanimously carried, the following resolution was adopted: RESOLVED that the officers of the corporation are hereby authorized and empowered to purchase from Mr. Joseph S. Biritz all assets and to accept and assume all liabilities as set out in the Balance Sheet of the former business of Mr. Joseph Biritz as an individual proprietor, which Balance Sheet is attached hereto and made a part hereof, and that in consideration for said net assets, the officers of the corporation are hereby authorized to issue an additional 900 shares of the common capital stock of the corporation to Joseph S. Biritz and to execute a demand negotiable note in the amount of $20,653.27 payable to Joseph S. Biritz with interest payable at the rate of 6% per annum. The minutes further showed that a salary of $15,000 per year was authorized for petitioner as president and a salary of $50 per week to Dorothy as secretary and treasurer. At the time of its incorporation no cash was transferred to Biritz Construction from petitioners' sole proprietorship. The account entered on the books of the company on March 1, 1954, entitled, "Land $27,310.02" *67 referred to the 10.847 acre tract which had been acquired by petitioner and Dorothy on November 21, 1952. The land, when it was acquired by petitioner and Dorothy in 1952, was undeveloped. When transferred to Biritz Construction, the land had been divided into 21 lots and was called Biritz Drive. Biritz Construction issued a note to petitioner dated March 6, 1954, in the amount of $20,653.27 with interest at 6 percent from date. This note was entitled, "Negotiable Note." The note recited that it was payable on demand, and if not paid on demand, that "it be placed in the hands of an attorney for collection, the parties hereto agree to pay reasonable attorney's fee." The note was not secured by a mortgage or otherwise. The minutes of the meeting of the board of directors of March 6, 1954, authorized a corporate bank account for Biritz Construction in the Baden Bank of St. Louis, but this account was not actually opened until April 12, 1954, when it was opened with an initial deposit of $2,000. After incorporation, the corporation continued to do work of the same nature as that which had been done by petitioner as a sole proprietor with respect to repair work, room additions, *68 millwright work, and building for individuals under contract. At the time the land was transferred to the corporation it was not completely developed. Development of the land proceeded during the corporation's fiscal year ended February 28, 1955. An account was opened on the corporate books entitled, "J. S. Biritz Account." The first entry in this account is under date of March 31, 1954, and shows an amount due by the corporation to petitioner of $19,094.50. Thereafter various entries of amounts due by the corporation and credits against these amounts were made in the "J. S. Biritz Account" so that as of the close of Biritz Construction's fiscal year ended February 28, 1955, there was a net amount shown as due by the corporation to petitioner of $35,683.33. Some of the items paid personally by petitioner in the development and improvement of Biritz Drive for Biritz Construction and entered in the "J. S. Biritz Account" as owed to petitioner were an amount of $7,476.95 paid by petitioner on March 12, 1954, for land and street excavation, an amount of $11,305 paid by petitioner on March 22, 1954, for concrete work, an amount of $1,100 paid on May 7, 1954, for a bond to the city of *69 Bellefontaine Neighbors, which was to insure compliance with city regulations, an amount designated land improvement of $10,671.43, and an amount of $561 for stonework on the entrance. Petitioner personally paid for all of the development and land improvements to Biritz Drive and these amounts were shown as owing to petitioner by Biritz Construction in the "J. S. Biritz Account" on the books of Biritz Construction. The balance sheet of Biritz Construction as set forth on its corporate Federal income tax returns for each of the fiscal years ended February 28, 1955, through February 29, 1960, show the following: Feb. 28,
Feb. 29,
Feb. 28,
1955
1956
1957
ASSETS
Cash
$ 9,643.51
$ 31,833.64
$ 13,901.87
Notes and accounts receiv-
able
3,609.31
Inventories - Labor, mate-
rial & other costs
39,546.98
31,230.01
32,672.01
Prepaid expenses
160.77
165.22
82.60
Depreciable assets
3,899.01
3,979.34
5,220.53
Less reserve for depre-
ciation
(415.05)
(1,466.42)
(2,274.56)
Net
3,483.96
2,512.92
2,945.97
Land less reserve
39,701.90
37,091.26
33,649.51
Other assets
300.00
525.00
475.00
Total assets
$ 96,446.43
$103,358.05
$ 83,726.96
LIABILITIES and CAPITAL
Accounts payable
$ 36,713.32
$ 11,640.23
$ 7,400.73
Bonds, notes, mortgages
payable
25,853.27
20,653.27
24,753.27
Accrued expenses
7,575.51
11,280.57
2,245.53
Other liabilities - Advances
15,200.00
40,410.00
29,592.80
Capital stock: Common stock
$ 10,000.00
$ 10,000.00
$ 10,000.00
Earned surplus and un-
divided profits
1,104.33
9,373.98
9,734.63
Total liabilities and
capital
$ 96,446.43
$103,358.05
$ 83,726.96
*70 Feb. 28,
Feb. 28,
Feb. 29,
1958
1959
1960
ASSETS
Cash
$ 11,551.37
$ 3,507.79
$ 25,962.56
Notes and accounts receiv-
able
437.00
7,765.80
651.78
Inventories - Labor, mate-
rial & other costs
43,434.70
46,822.45
57,609.28
Prepaid expenses
77.05
Depreciable assets
4,717.70
4,839.08
5,024.60
Less reserve for depre-
ciation
(1,636.43)
(2,834.24)
(3,912.63)
Net
3,081.27
2,004.84
1,111.97
Land less reserve
28,097.29
27,342.03
21,931.85
Other assets
516.06
534.02
634.33
Total assets
$ 87,194.74
$ 87,976.93
$107,901.77
LIABILITIES and CAPITAL
Accounts payable
$ 5,299.19
$ 5,778.62
$ 2,642.42
Bonds, notes, mortgages
payable
24,653.27
42,132.47
10,180.00
Accrued expenses
1,992.57
8,718.99
8,592.37
Other liabilities - Advances
34,722.74
7,900.00
60,453.16
Capital stock: Common stock
$ 10,000.00
$ 10,000.00
$ 10,000.00
Earned surplus and un-
divided profits
10,526.97
13,446.85
16,033.82
Total liabilities and
capital
$ 87,194.74
$ 87,976.93
$107,901.77
The corporate Federal income tax returns of Biritz Construction for each of its fiscal years ended February 28, 1955, through February 29, 1960, show *71 income computed as follows: Feb. 28,
Feb. 29,
Feb. 28,
1955
1956
1957
Sales
$110,901.51
$184,507.81
$170,788.70
Cost of sales
86,634.34
147,076.84
152,381.17
Gross profit
$ 24,267.17
$ 37,430.97
$ 18,407.53
Other income
75.00
675.37
484.36
Total income
$ 24,342.17
$ 38,106.34
$ 18,891.89
Deductions: Compensation of officers
Joseph Biritz
$ 13,000.00
$ 14,300.00
$ 10,400.00
Dorothy Biritz
2,600.00
2,600.00
1,300.00
Rent
600.00
600.00
600.00
Interest on notes pay-
able
1,285.20
1,657.16
1,445.95
Taxes
391.03
810.10
887.44
Depreciation
730.15
886.61
1,296.24
Advertising
68.30
294.65
1.34
Other deductions
4,089.87
5,144.04
2,445.70
Total deduction
$ 22,764.55
$ 26,292.56
$ 18,376.67
Taxable income reported
on return
$ 1,577.62
$ 11,813.78
$ 515.22
Federal income tax lia-
bility reported on re-
turn
473.29
3,544.13
154.57
Taxable income less Fed-
eral income tax liability
reported on return
$ 1,104.33
$ 8,269.65
$ 360.65
Feb. 28,
Feb. 28,
Feb. 29,
1958
1959
1960
Sales
$109,289.23
$ 98,148.57
$128,692.42
Cost of sales
90,679.26
73,541.29
102,581.90
Gross profit
$ 18,609.97
$ 24,607.28
$ 26,110.52
Other income
286.64
374.71
298.66
Total income
$ 18,896.61
$ 24,981.99
$ 26,409.18
Deductions: Compensation of officers
Joseph Biritz
$ 8,065.00
$ 12,000.00
$ 12,000.00
Dorothy Biritz
1,325.00
1,300.00
1,300.00
Rent
600.00
600.00
600.00
Interest on notes pay-
able
1,693.70
1,939.02
2,580.11
Taxes
722.35
758.63
1,044.67
Depreciation
1,201.74
1,197.81
678.37
Advertising
26.80
57.48
91.73
Other deductions
4,130.10
2,957.79
4,418.63
Total deduction
$ 17,764.69
$ 20,810.73
$ 22,713.51
Taxable income reported
on return
$ 1,131.92
$ 4,171.26
$ 3,695.67
Federal income tax lia-
bility reported on re-
turn
339.58
1,251.38
1,108.70
Taxable income less Fed-
eral income tax liability
reported on return
$ 792.34
$ 2,919.88
$ 2,586.97
*72 The balances of Land and Improvements, and Reserve for Improvements and Sewers, and the net amounts thereof shown on the Land and Improvements Ledger of Biritz Construction as of February 28, 1954, and as of the close of each of its fiscal years ended February 28, 1955, through February 29, 1960, are as follows: Reserve for
Net Amount
Land and
Improvements
Reported on
Period
Improvements
and Sewers
Balance Sheet
February 28, 1954
$27,310.02
$27,310.02
Taxable year ended: February 28, 1955
49,143.88
$9,441.98
39,701.90
February 29, 1956
46,285.36
9,194.10
37,091.26
February 28, 1957
41,310.36
7,660.85
33,649.51
February 28, 1958
35,758.14
7,660.85
28,097.29
February 28, 1959
35,002.88
7,660.85
27,342.03
February 29, 1960
24,981.85
3,050.00
21,931.85
As of the close of Biritz Construction's fiscal years ended February 28, 1955, through February 29, 1960, there were the following balances due petitioner, as shown in the J. S. Biritz Account on the corporate books and the following balances due on trade accounts: Taxable Year
J. S. Biritz
Trade
Ended
Account
Accounts
February 28, 1955
$35,680.33
$1,032.99
February 29, 1956
7,821.54
3,818.69
February 28, 1957
6,183.28
1,217.45
February 28, 1958
4,418.74
880.45
February 28, 1959
3,849.01
1,929.61
February 29, 1960
1,132.44
1,509.98
*73 Biritz Construction, as had petitioner as a sole proprietor, paid all trade accounts within 30 days in order to obtain the 2 percent discount except where some question arose as to the amount of the bill or the quality of the material purchased. At the end of each year, the only amounts owed by Biritz Construction to trade accounts were as we have set out. The total liabilities in the amount of $85,342.10 reported on the corporate Federal income tax returns of Biritz Construction as of the close of its fiscal year ended February 28, 1955, included the $35,680.33 owed to petitioner shown in the "J. S. Biritz Account," the $20,653.27 shown on the books of Biritz Construction as a note due to petitioner, trade accounts of $1,032.99, and the following amounts owed to petitioner and Dorothy: Reported on
Owed to
Description
Return as
Amount
Joseph Biritz
Salary
Note payable
$4,600.00
Joseph and Dorothy Biritz
Rent
Note payable
600.00
Joseph Biritz
Salary
Accrued liability
2,800.00
Dorothy Biritz
Salary
Accrued liability
2,400.00
Joseph Biritz
Interest on $4,600.00
Accrued liability
46.00
salary note
Joseph Biritz
Interest on note of
Accrued liability
1,239.20
$20,653.27
*74 Part of petitioner's and Dorothy's residence was rented to Biritz Construction at an amount of $600 a year for use as an office. The note payable for rent shown on the books of Biritz Construction at February 28, 1955, was for the first year's rent of this office space. Biritz Construction, during its fiscal years ended February 28, 1955, through February 29, 1960, issued the following notes, in addition to the note of March 6, 1954 given at incorporation, to petitioner, Dorothy, or petitioner and Dorothy at the dates and for the purpose indicated: Date Note
Date Check Given
Issued
Purpose for Which Issued
Amount
in Payment
1954
Dec. 29
J. S. Biritz salary
$4,600.00
Sept. 21, 1955
1955
Feb. 28
Rental office
600.00
Oct. 5, 1955
Mar. 1
Interest on $20,653.27 note to
1,239.20
Oct. 5, 1955
3/1/55
Mar. 1
J. S. Biritz salary 2/28/55
2,800.00
Oct. 31, 1955
Mar. 1
D. Biritz salary 2/28/55
2,400.00
Oct. 5, 1955
1956
May 1
J. S. Biritz salary 2/28/56
3,100.00
Dec. 18, 1956
May 1
D. M. Biritz salary 2/28/56
1,000.00
Dec. 18, 1956
1957
Mar. 1
J. S. Biritz interest 2/28/57 on
1,239.20
Dec. 18, 1957
$20,653.27 note
May 1
J. S. Biritz 6% interest on
186.00
Dec. 18, 1957
$3,100 note
May 1
D. M. Biritz 6% interest on
60.00
Dec. 18, 1957
$1,000 note
June 24
J. S. and D. Biritz 6%
2,000.00
Dec. 18, 1957
Sept. 10
J. S. and D. Biritz 6%
4,000.00
Jan. 20, 1960
Nov. 13
J. S. and D. Biritz 6%
3,000.00
Dec. 18, 1957
1958
Mar. 1
J. S. Biritz
1,239.20
May 21, 1959
Aug. 18
J. S. and Dorothy Biritz 6%
8,000.00
Jan. 20, 1960
Sept. 6
J. S. and Dorothy Biritz 6%
4,000.00
Dec. 7, 1959
Sept. 10
J. S. Biritz and Dorothy Biritz
240.00
Sept. 22, 1959
1959
Feb. 19
J. S. and Dorothy Biritz
4,000.00
Jan. 20, 1960
Mar. 1
J. S. Biritz
1,239.20
Nov. 24, 1959
Mar. 1
J. S. Biritz
74.35
Nov. 24, 1959
May 14
J. S. Biritz
4,980.00
Aug. 18
J. S. and Dorothy Birit0
interest on $8,000.00 of
8/18/58
480.00
Sept. 6
J. S. and Dorothy Biritz
interest on $4,000.00 of
9/6/58
240.00
Sept. 10
J. S. and Dorothy Biritz
interest on $4,000.00 of
9/10/57
240.00
1960
Feb. 19
Joseph and Dorothy Biritz
240.00
*75 Commencing with its first year of operation Biritz Construction built some homes on lots on Biritz Drive without having a contract for the sale of the homes. Petitioner had, as a sole proprietor, employed two regular carpenters and from time to time had employed other carpenters as they were needed. Petitioner built homes for sale without any prior contract of sale thereon in order to insure regular work for his employees. During the period March 1, 1954, to February 29, 1960, Biritz Construction completed construction of and sold 11 residences on Biritz Drive. Of the 11, 3 were fully constructed prior to sale and 1 was partially constructed prior to sale, the other 7 being constructed under contract after the lots were sold. In addition, Biritz Construction during this period constructed one residence outside of Biritz Drive and improved certain church property outside of Biritz Drive. Biritz Construction did not obtain construction loans with respect to any of the residences which it built and some of the money received for which notes were given to petitioner, as well as some of the advances made to the company on open account by petitioner, was used to defray the cost of *76 construction which was not defrayed by receipt of earnest money and progress payments. Biritz Construction had total construction sales and a division of these sales between remodeling and repairing, homes and lots, and earnest money received which it showed on its books as a liability for its fiscal years ended February 28, 1955, through February 29, 1960, as follows: Construction Sales
Earnest Money
Received,
Fiscal Year
Remodeling and
Homes and
Reported as
Ended
Total
Repairing
Lots
Liability
February 28, 1955
$110,901.51
$ 66,057.79
$ 44,843.72
$15,200.00
February 29, 1956
184,507.81
72,554.16
111,953.65
40,410.00
February 28, 1957
170,788.70
38,904.41
131,884.29
29,592.80
February 28, 1958
109,289.23
33,786.51
75,502.72
34,722.74
February 28, 1959
98,148.57
53,309.85
44,838.72
7,900.00
February 29, 1960
128,692.42
57,714.32
70,978.10
60,453.16
Total
$802,328.24
$322,327.04
$480,001.20
The cost of completed construction sold during the period March 1, 1954, through February 29, 1960, amounted to a total of $652,894.80, divided into the following items: Land
$ 31,973.73
Labor
87,079.14
Material and subcontracts
531,893.34
Miscellaneous
1,948.59
*77 The cost of the lots on which the three residences which were completed by Biritz Construction prior to sale were built and the construction costs of the residences thereon as of February 29, 1956, February 28, 1958, and February 29, 1960, amounted to $31,578, $32,974.50, and $38,763.81, respectively. The total cost of the lot and construction of the residence thereon which was sold during the process of construction was the amount of $37,340.43 of which approximately $9,800 was paid by Biritz Construction for construction costs prior to the sale. The total of the material and subcontract costs of construction in progress on one of the lots on which petitioner built without a prior sale as of February 28, 1955, was $24,072.71, and the total labor cost of the construction in progress as of this date for this same residence was $2,303.16. The instrument entitled, "Negotiable Note" in the amount of $20,653.27 issued to petitioner by Biritz Construction on March 6, 1955, was marked "paid" on February 10, 1960. On that date two checks, one in the amount of $10,653.27 and the other in the amount of $10,000, were issued by Biritz Construction to petitioner and charged on the books of *78 Biritz Construction as payment of the $20,653.27 note. Petitioner was of the opinion that as of February 10, 1960, Biritz Construction was able to pay the "ground off" and "note off." He wanted to buy additional ground and he did buy, with another individual, 20 acres of ground during 1960. There were banks in the St. Louis area during the years 1954 through 1960 which made construction loans for building of residences, generally taking as security a mortgage on the property. Petitioner as president of Biritz Construction did not investigate obtaining any such loan. He had not borrowed construction money as an individual nor money to buy the land which he purchased in 1952 and transferred to Biritz Construction. As of March 1, 1954, petitioner's credit rating was such that as an individual he could have obtained credit in addition to 30 days on his trade accounts. Attached to the corporate income tax return of Biritz Construction for its fiscal year ended February 28, 1955, was the following statement of information: STATEMENT OF INFORMATION TO BE FILED IN REGARD TO NON-TAXABLE TRANSFER TO A CONROLLED CORPORATION I.R.C. SECTION 351(a)
(1) In February, *79 1954, the Corporation received from Joseph S. Biritz the assets of a single proprietorship which he operated in his own name. Immediately after the transfer he owned the controlling interest in the corporation. The property transferred was valued as follows: Joseph S. Biritz
Joseph S. Biritz Construction Co.
Listed by Cor-
Difference
Assets
Book Value
poration as
if Any
Land
$27,310.02
$27,310.02
$0
Account receivable
822.64
822.64
0
1951 Chevrolet
1,314.92
1,314.92
0
Tools & equipment
166.67
166.67
0
1952 Chevrolet truck
851.58
851.58
0
Office equipment
175.00
175.00
0
Incorporation fee
125.00
125.00
0
$30,765.83
$30,765.83
$0
Liabilities
Accrued withholding tax
$ 76.10
$ 76.10
$0
Accrued F.O.A.B. tax
36.46
36.46
0
$ 112.56
$ 112.56
$0
Net Assets
$30,653.27
$30,653.27
$0
(2) The amount of consideration passing from J. S. Biritz Construction Co. to the transferor for the above listed assets was (a) 1,000 shares of capital stock having a par value of $10.00 per share; (b) the assumption of the above listed liabilities; and (c) the issuance of securities in the amount of $20,653.27. The ownership *80 and control of J. S. Biritz Construction Co. stock immediately after the transfer was as follows: Joseph S. Biritz
996 shares
Dorothy Biritz
2 shares
Harry J. Kemna
2 shares
This return was signed by petitioner as president of Biritz Construction. On its corporate income tax returns for each of its fiscal years ended February 28, 1955, through February 29, 1960, Biritz Construction claimed as a deduction for salary paid to petitioner an amount of less than the $15,000 authorized to be paid petitioner by the corporate minutes of March 6, 1954. In each of the fiscal years ended February 28, 1959, and February 29, 1960, petitioner waived $3,000 of the salary of $15,000 provided for him by the corporate minutes. For the fiscal year ended February 29, 1956, petitioner waived $700 of the salary provided for him. Biritz Construction on its Federal corporate income tax returns for each of its fiscal years ended February 28, 1955, through February 29, 1960, showed an interest deduction which in each year included an amount of $1,239.20 representing interest on the March 6, 1954, note in the amount of $20,653.27. In the calendar year 1960, as had been their custom *81 in prior years, petitioners on their joint Federal income tax return reported as income, interest received, which included an amount of $1,239.20 as received from Biritz Construction and shown by that company on its books as interest on the note of $20,653.27. The books of Biritz Construction showed payment of the $20,653.27 note in February 1960. Respondent in his notice of deficiency to Biritz Construction disallowed the interest deduction of $1,239.20 for each of its fiscal years ended February 28, 1959, and February 29, 1960, with the explanation that it was determined that this amount of interest expense deduction claimed on the corporate tax return represented a nondeductible dividend distribution. Respondent in his notice of deficiency to petitioner and Dorothy increased their taxable income as reported for the calendar year 1960 by the amount of $15,290.30 designated as additional dividend income with the following explanation: It is determined that distributions received by you from J. S. Biritz Construction Co. in the amounts of $1,239.20 and $20,653.27 in the taxable year 1960 constitutes taxable dividends to the extent of $1,239.20 and $15,290.30, respectively. Inasmuch *82 as you failed to report said amounts as dividends but reported the sum of $1,239.20 as interest income on your income tax return for the taxable year 1960, your taxable income as reported is increased in the amount of $15,290.30. Opinion In the instant case if the note given by Biritz Construction to petitioner was in reality and substance, as well as in form, an indebtedness by the corporation to petitioner, then the payments by the corporation of interest thereon are deductible by it, and the amounts paid to petitioner in 1960 by the corporation stated to be in payment of the note are a repayment of an indebtedness and not in effect a dividend to petitioner. The basic issue here is, therefore, whether the instrument issued by Biritz Construction to petitioner on March 6, 1954, in the form of a negotiable note created a true indebtedness, or whether it represented in substance an equity investment by petitioner in the corporation. This issue is one that has been litigated in many cases. Section 163(a) of the Internal Revenue Code of 1954[1] provides for a deduction of interest paid or accrued within a taxable year on indebtedness. It is, however, settled *83 that instruments meeting the formal criteria of indebtedness do not necessarily in substance create an indebtedness for Federal tax purposes. If such an instrument evidences an advance which is in substance equity, or risk capital, it has been held to represent a capital investment in the business, and payments by the corporation of amounts denominated interest have, therefore, been held to constitute, in fact, dividends. Moughon v. Commissioner, 329 F. 2d 399 (C.A. 6, 1964), affirming a Memorandum Opinion of this Court. If the instrument issued to petitioner by Biritz Construction denominated a note did not create a true indebtedness, but rather was given in return for the transfer to the corporation of risk capital, then not only is the corporation not entitled to deduct the payments denominated as interest, but the amounts received by petitioner under the denomination of interest and repayment of the note represent, to the extent of earnings and profits of the corporation, dividends to petitioners. n2 Gooding Amusement Co., 23 T.C. 408 (1954), affd. 236 F. 2d 159 (C.A. 6, 1956).
*84 Although many of the cases involving instruments received upon the formation of a corporation deal with so-called "thin capitalization" (see for example 2554-58 Creston Corp., 40 T.C. 932, 936 (1963) and cases there cited), the adequacy of the capitalization of the corporation is only one of the criteria for determining the issue. See Moughon v. Commissioner, supra. In addition to the adequacy of the capitalization of the debtor corporation and the formal provisions of the note, such items as the presence or absence of a maturity date, whether the debt is subordinated to that of other creditors, whether an unrelated person would have made a similar loan under similar circumstances, the presence or absence of security for the loan, the reasonableness of expectation of repayment, the use to which the funds are put, and whether repayment is dependent upon profits of the corporation are elements to be considered. Joseph W. Hambuechen, 43 T.C. 90 (1964). The question is basically a factual one, requiring a determination from all the facts of record as to whether as a matter of "substantial economic reality" a debt has been created. Gilbert v. Commissioner, 262 F. 2d 512 *85 (C.A. 2, 1959), affirming a Memorandum Opinion of this Court. As we stated in 2554-58 Creston Corp., supra, "It has often been recognized that 'the essential difference between a creditor and a stockholder is that the latter intends to make an investment and take the risks of the venture, while the former seeks a definite obligation, payable in any event.' Commissioner v. Meridian & Thirteenth R. Co., 132 F. 2d 182, 186 (C.A. 7)." One of the factors to be considered is whether advances to a corporation are in proportion to the stock ownership. Charter Wire Inc. v. United States, 309 F. 2d 878 (C.A. 7, 1962). The fact that stockholders of a corporation at all times held notes in direct proportion to their ownership in the corporation "raises a strong inference that the loans represent capital investment." Also, the fact that the assets transferred in exchange for the notes of the corporation were essential to the conduct of the corporation's business indicates a capital investment and not a debt, as does the absence of the establishment by the corporation of a sinking fund for repayment of the debt. Charter Wire, Inc. v. United States, supra. *86 Where the purported loan is by a sole stockholder, as in the instant case, it is obvious that the stock ownership and purported loan are in equal proportions. However, the existence of advances in proportion to stock ownership is not, standing alone, conclusive that the debt-type securities do not represent a true indebtedness and not an equity investment in the corporation. See Ruspyn Corporation, 18 T.C. 769 (1952). It is recognized that a sole stockholder may lend money to his corporation and a true indebtedness be created. As stated in Rowan v. United States, 219 F. 2d 51, 55 (C.A. 5, 1955), "stockholders of corporations have always been free to commit to corporate operations such capital as they choose and to lend such additional amounts as they may elect to assist in the operation if that is their true intent, * * *." In Rowan v. United States, supra, it was held that the intent of the stockholder is an inference to be drawn from all the facts. The Court in that case, in concluding that the corporation was in substance indebted to its stockholder, called attention to the absence of such circumstances as the following: * * * that the *87 initial payments, both capital and advances, were all made for acquisition of capital assets, as in Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F. 2d 182, and Matthiessen v. Commissioner, 2 Cir., 194 F. 2d 659; or the issuance of certificates of stock, such as Meridian & Thirteenth Realty Co., [footnote omitted] supra; or subordination to other indebtedness; or inordinately postponed due date; or agreement not to enforce collection; or provision for payment of "interest" only out of earnings; or payment of advances as initial funds to start the corporate life, as in Janeway v. Commissioner, 2 Cir., 147 F. 2d 602; one of which or a combination of which is present in the usual case of this type that comes before the appellate courts for consideration. It is also, of course, recognized that when respondent has determined that an advance is in substance an equity investment by a taxpayer stockholder in the corporation, the burden is on the taxpayer to establish that for tax purposes instruments denominated as notes or other evidences of indebtedness do not represent capital placed at the risk *88 of the business. Moughon v. Commissioner, supra, and Joseph W. Hambuechen, supra. Analyzing the facts in the instant case in the light of the criteria to be considered in resolving the issue here presented, we have concluded that it was petitioner's intent, and petitioner did, place all of the assets transferred to Biritz Corporation at the date of its incorporation at the risk of the corporate business. We have concluded that petitioner intended to be paid for the portion of the assets advanced to the corporation for which the note was given only if and when the corporation had sufficient profits to make the payment without handicapping the operation of its business. When Biritz Construction was formed, the major assets turned over to it was land that required substantial development before it could be used in the corporation's business of constructing homes. The only other assets turned over to the corporation, except for an account receivable from the St. Louis Water Company in the amount of $822.64, were a Chevrolet automobile and truck, tools and equipment, and the amount paid for the certificate of incorporation. The company had no working capital *89 and no source of obtaining it except from petitioner or from mortgaging the land transferred to it by petitioner. The corporation had the land available for mortgaging only because petitioner did not require that he be given a mortgage on the land to secure his note. The inference from the testimony in the record is that had an unrelated person sold land to the corporation for a note, he would have required that such note be secured by a mortgage on the land. Petitioner contends that Biritz Construction did not need working capital since its customers advanced the money on which it operated. The facts of record do not support this contention. The evidence shows that over $30,000 of land improvements were required on Biritz Drive before the land was ready for use as building lots. Petitioner contends that even though he advanced all of the working capital for this purpose, as well as for the building of the houses which the corporation constructed prior to entering into contracts for their sale, the corporation could have obtained construction loans to finance these operations. Petitioner's witness who was testifying in this respect stated that, of course, the loans would be mortgage *90 loans. Although the evidence is not specific in this regard, it might be that with unencumbered realty, the corporation could have obtained mortgage loans for the purpose of further improvement of the land and the building of houses thereon. However, if a person other than a stockholder of Biritz Construction had sold land to such a newly formed corporation, the indication from the record is that such person would have required a mortgage on the land to secure any portion of the purchase price for which a note was taken. Had this occurred the land would not have been free and clear to use for securing any loans for its further development. Petitioner's testimony as to the need of the corporation for working capital is of little value. In his testimony, he constantly confused his personal activities with the activities of the corporation. He testified that he personally developed the land. [3] However, the record shows that the land was developed by the corporation with money advanced to the corporation by petitioner. *91 The evidence likewise shows that petitioner took notes for interest accrued on the corporation's books as owing to him, as well as notes for the rental owed him by the corporation and for part of his salary, and that he waived part of his salary in several years. Petitioner did not request payment of the note he received for the land he transferred to Biritz Construction upon its formation until such time as he considered the corporation able to pay it off. All of these facts indicate that the corporation could operate on its limited initial assets because of petitioner's assistance. Considering these facts in conjunction with all the other facts of record, we conclude that petitioner intended the land he transferred to the corporation for which he received the $20,653.27 note to be at the risk of the corporate business. We conclude that he intended that the corporation make payment of interest or principal on this note only if the business were successful and able to pay such amounts without curtailing its business activities. Respondent has raised no question here of whether an indebtedness was created by the salary notes given to petitioner, or notes for advances by petitioner *92 to the corporation for working capital, or the interest payments on these notes. Cf. Erard A. Matthiessen, 16 T.C. 781 (1951), affd., 194 F. 2d 659 (C.A. 2, 1952). He does contend that the original capitalization of Biritz Construction was such as to necessitate petitioner's making these advances or having the properties which he transferred to the corporation so encumbered that the ability of the corporation to repay his original note at any foreseeable date would be unlikely. We agree with respondent that the successful development of the land by Biritz Construction was the only circumstance under which petitioner could reasonably anticipate payment of his note. Substantial capital was required to be invested in the land before it was in a salable condition. These facts indicate that the amount represented by the $20,653.27 note was placed at the risk of the corporate business. See Jewell Ridge Coal Corporation v. Commissioner, 318 F. 2d 695 (C.A. 4, 1963), affirming a Memorandum Opinion of this Court. Petitioner argues that the corporation could have been formed and could have commenced business without his transferring the land to it. *93 He states that as a lot was needed for building by the corporation, he could have sold that lot to the corporation. Petitioner overlooks the fact that such a procedure would have completely changed the circumstances under which the corporation operated. What would have been the state of development or value of the land when it was sold by petitioner to the corporation under such assumed circumstances is entirely speculation, as is whether the corporation would have been able to pay for the land when it needed to buy it. The land which petitioner transferred to the corporation was needed to get the corporation into operation as it in fact did operate. This fact indicates that the note given petitioner for the land represented money at the risk of the corporate business. Isidor Dobkin, 15 T.C. 31 (1950), affirmed per curiam, 192 F. 2d 392 (C.A. 2, 1951). We conclude that under the circumstances here shown the entire properties transferred to the corporation were in the nature of a contribution to the corporate equity capital at the risk of the corporate business. The note petitioner took for the properties transferred represented an equity investment in the *94 corporation and not an indebtedness for Federal tax purposes. Since petitioner's only contention that the payment by the corporation to him of the principal of the note did not constitute a dividend to him is that the note represented a true indebtedness, petitioner has failed to show error in respondent's determination that this payment was a dividend. Gooding Amusement Co., supra. We therefore sustain respondent in his disallowance of the claimed interest deductions by the corporation in its fiscal years ended February 28, 1959, and February 29, 1960, and in considering the amounts received by petitioner in 1960 in purported payment of interest on and principal of the note as dividends to petitioner to the extent of the available earnings and profits of Biritz Construction. Decision will be entered for respondent. Footnotes
1. Sec. 163(a) General Rule. - There shall be allowed as a deduction interest paid or accrued within the taxable year on indebtedness. n2 The parties have no disagreement as to the amount of earnings and profits available for distribution as dividends in the instant case.↩
3. Petitioner testified as follows: A. (Interrupting) J. S. Biritz developed the whole plot of ground including the improvements. Now, I can't make it clearer than that. Q. When you talk about J. S. Biritz - A. (Interrupting) Joseph Stephen Biritz, myself. It wasn't the corporation, the corporation didn't have anything to do with it. I can't make it no clearer. I could draw you a picture. Q. Now, Mr. Biritz, the cost of improvements have been deducted on the corporate return for fiscal 1955? A. The cost - Q. (Interrupting) The cost of the improvements - you have testified, now, that the cost of improvements, moneys paid to Israel Brothers, A. O. Cledd, have been deducted on the return for fiscal 1955. A. I do not know. Q. You have just testified to that, sir. A. I said that I, J. S. Biritz, not the corporation, my personal account, paid for this development. Q. Now, it is true that the corporation claimed the deductions for the payments that you made, isn't that true? You have just testified that it is true, Mr. Biritz. A. I said that I, not the corporation, paid for this development.↩