Benjamin D. and Madeline Prentice GILBERT, Petitioners on Review,

v.

COMMISSIONER OF INTERNAL REVE- NUE, Respondent on Review.

No. 102, Docket 25246.

United States Court of Appeals Second Circuit.

Argued Nov. 12, 1958.

Decided Jan. 14, 1959.

Fred R. Tansill, Washington, D. C. (Francis E. H. Davies, Goodwin, Rosen- baum, Meacham & White, Washington, D. C., on the brief), for Petitioners on Review.

Melvin L. Lebow, Atty., Dept. of Jus- tice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Hilbert P. Zarky, Fred E. Young- man, Attys., Dept. of Justice, Washing- ton, D. C., on the brief), for Respondent on Review.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

MOORE, Circuit Judge.

This is a petition for review of a de- cision of the Tax Court, entered January 23, 1958, which sustained the Commis- sioner's determination of deficiency in the income tax of Benjamin D. and Made- line P. Gilbert for the calendar year 1948 in the amount of $48,518.65. The Tax Court's decision was based on a finding that advances made by Benjamin to a corporation of which he was a stock- holder were capital contributions and not loans for which a deduction could be taken under section 23(k) of the Internal Revenue Code of 1939. The matter is

before this court for the second time. On the first appeal the court remanded the cause for proceedings consistent with its opinion (2 Cir., 248 F.2d 399, 400). The court desired to know "what was the principle, or what were the standards, applied by the Tax Court" and requested "further and more explicit findings." The Tax Court "studied carefully" the three opinions of Judges Medina, Waterman and Hand and was "in some doubt as to what 'proceedings consistent with this opinion' or what 'further proceedings' [were] called for under the judgment of the Court of Appeals." Since "[T]he facts were fully developed at the trial of this case," and since it could not find that "any useful purpose would be served by setting this case down for further trial" the Tax Court on the same record attempted to comply with the judgment and opinion of the Court of Appeals by making "certain specific findings of ultimate facts, as distinguished from findings of evidentiary facts." Neither party requested a hearing for the introduction of additional evidence. The Tax Court, therefore, sufficiently complied with this court's direction by making additional findings which disclosed the "standards" upon which its decision rested.[1]

In summary, the seven new findings as they apply to petitioner Benjamin D. Gilbert are: (1) Benjamin anticipated and understood that the funds received by Gilbor, Inc., upon the issuance of its capital stock, would not be sufficient to finance the conduct of its business; (2) no outside investor would have made similar advances without security; (3) the advances were made substantially in proportion to the stock ownership of the stockholders; (4) the advances were made without regard to the normal creditor safeguards; (5) no effort was made to enforce the obligations; (6) Benjamin had no reason to expect repayment unless the business were successful; and (7) that as a matter of "substantial economic reality" the advances by Benjamin

were placed at the risk of the business of Gilbor, Inc., and constituted risk capital.

These findings are relevant to the resolution of the problem posed by this court in its previous opinion (248 F.2d 399, 400), namely "whether advances by a taxpayer to his corporation will be treated as loans for tax purposes."

On this appeal, petitioner Benjamin claims, first, that the Tax Court failed to follow this court's directions in that it did not advert to certain indicia mentioned in the opinion of Judge Medina, such as debt-equity ratio, tax avoidance motives and the use to which the funds were put; and, second, that the findings do not justify its holding that Benjamin's advances to Gilbor, Inc. were for tax purposes capital contributions and not loans.

The only question, however, now before this court is whether upon the law and the facts in the record the Tax Court was justified in concluding that the advances by Benjamin were not deductible as bad debts in his 1948 income tax return under section 23(k) of the Internal Revenue Code of 1939. Conversely, the question is not whether all possible problems discussed in the previous opinion have been specifically dealt with by the Tax Court but only whether the findings as actually made are supported by the evidence and lead to the conclusion reached as a matter of law.

Certain of the principles here applicable have been frequently stated by the courts. Whether advances to a corporation are contributions to capital or loans "is essentially a question of fact upon which the taxpayer has the burden of establishing his right to such deduction" (Matthiessen v. Commissioner of Internal Revenue, 2 Cir., 1952, 194 F.2d 659, 661). The form of the transaction is not controlling, but rather the substance. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; 1432 Broadway Corporation

---

1. The pertinent facts are fully stated in the original findings and opinion of the Tax Court (15 T.C.M. 688) and in this court's first opinion (248 F.2d 399).

v. Commissioner of Internal Revenue, 1945, 4 T.C. 1158, affirmed per curiam 2 Cir., 1947, 160 F.2d 885. Where the loss sought to be regarded as a bad debt "is as a matter of substantial economic reality a loss of risk capital" (248 F.2d 399, 407), it will be disallowed.

The term "substantial economic reality" is merely a way of expressing the fact that the determination whether the funds advanced are to be regarded as a "capital contribution" or "loan" must be made in the light of all the facts of the particular case. Rarely should any one element be determinative. See John Kelley Co. v. Commissioner, 326 U.S. 521, at page 530, 66 S.Ct. 299, 304, 90 L.Ed. 278, where the court said, "There is no one characteristic * * * which can be said to be decisive in the determination of whether the obligations are risk investments in the corporations or debts." See also, Gooding Amusement Co. v. Commissioner of Internal Revenue, 6 Cir., 1956, 236 F.2d 159, certiorari denied 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599; Earle v. W. J. Jones & Son, 9 Cir., 1952, 200 F.2d 846; Brinker v. United States, D.C.N.D.Cal.1953, 116 F.Supp. 294, affirmed per curiam, 9 Cir., 1955, 221 F.2d 478. Nor does the answer depend upon the taxpayer's motive. Gregory v. Helvering, supra. A brief review of the salient facts demonstrates the soundness of the Tax Court's decision.

Upon graduation from college, in 1930, petitioner Benjamin D. Gilbert showed talents as a salesman and promoter which he continued to exhibit during the next twenty years. In 1940, after a series of jobs covering a wide range of business activities, he alone, or with a partner, commenced to organize, or become interested in, a number of small companies, which engaged in the manufacture of mimeograph duplicators, wooden products, adobe bricks, pocket stoves, a rubber latex spray, and experimental and production tools and dies for war use. Benjamin's other interests were the Perfect Oven Company, the Vacuum Concrete Corporation, and Gilbor, Inc., to which he made the advances in question.

After its formation, Gilbor, Inc. acquired by purchase stock of the Oven and the Concrete companies. Turned Woods, Inc. was organized as a subsidiary and Beaver Wood Products Co. (in financial difficulties) and Integrated Wood Products, Inc. were acquired. These companies required funds for their operation and development which they received from Gilbor, Inc. Throughout the years 1946 through 1948 Benjamin, his wife, Madeline, and his business associate, Albert Borden, made substantial advances to Gilbor, Inc. In view of the nature of the companies in which Gilbor, Inc. was interested, petitioner must have known that the chances of repayment would be very slim unless the various controlled companies prospered. The advances to Gilbor, Inc. were made during a period in which interest on prior "loans" was in default, the principal was unpaid and the corporation was insolvent, and they were used primarily for working capital and the purchase of capital assets.

Considering: (1) Benjamin's business background which must have acquainted him with the capital needs of his various ventures and the real possibility that his advances might well be swallowed up by Gilbor's capital requirements; (2) the attempt to keep the Gilbert-Borden advances closely proportionate to their stockholdings; and (3) the continued "loans" to a company which obviously was in serious financial difficulty and could not be expected to repay unless there were a substantial improvement in its financial affairs, it cannot be said that Benjamin has sustained the burden of proof which he must bear in showing that the Tax Court's decision is erroneous.

Petitioner's argument that the Tax Court arrived at three different and inconsistent results in treating Benjamin's advances as capital contributions, his wife's advances as non-business bad debts and Albert Borden's advances as business bad debts is not persuasive because each person had a sufficiently different relationship with Gilbor, Inc. to justify these conclusions.

The decision that the advances made by petitioner Benjamin were capital contributions and not debts within the meaning of section 23(k) of the Internal Revenue Code of 1939 obviates the necessity of passing upon respondent's contention that if the advances were debts they were non-business debts.

The decision of the Tax Court is affirmed.