NICHOLAS MOREY, JR., and BETTY J. MOREY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morey v. Commissioner
Docket No. 1696-76.
United States Tax Court
T.C. Memo 1978-412; 1978 Tax Ct. Memo LEXIS 102; 37 T.C.M. (CCH) 1712; T.C.M. (RIA) 78412; October 16, 1978, Filed Orville L. Hardman, for the petitioners. Donald W. Mosser, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the years and in the amounts as follows: Year
Amount
1969
$ 75,196.00
1970
14,024.00
1971
7,734.32
1972
450.00
The issues for decision are: (1) Whether amounts advanced by petitioners to, or on behalf of, Morey Construction Company, Inc., represented a bona fide loan or a contribution to the corporation's capital; (2) To the extent, if any, the funds advanced to the corporation are considered to be loans, were such amounts deductible in 1972 under either section 165 [1] or section 166. [2]
*104 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, Nicholas Morey, Jr. and his wife Betty J. Morey, resided in Parkersburg, W. Va., at the time of filing their petition herein. Beginning in 1956 and continuing throughout the years in question, petitioner Nicholas Morey, Jr. (hereinafter referred to as petitioner) has been involved in the construction and general excavation business. Since 1967 petitioner has conducted a portion of his business through a sole proprietorship known as Morey Construction Equipment (Morey Construction) and a portion through a corporation called Morey Construction Company, Inc. (Morey, Inc.). [3]
Both Morey Construction and Morey, Inc. were engaged in government contracting work. As a precondition to obtaining these contracts, Morey Construction and Morey, Inc. *105 were required to furnish a performance and completion bond. To fulfill this requirement, in 1968 Morey, Inc., Morey Construction, and petitioner entered into an indemnity agreement with the Great American Insurance Company (Great American). This agreement essentially provided that Great American would execute bonds as surety for Morey, Inc. on various construction contracts, and that petitioner individually would indemnify the insurance company for any loss it sustained as surety for Morey, Inc.
In October 1970 Morey, Inc. borrowed $ 29,150 from the Union Trust & Deposit Company of Parkersburg, W. Va. (Union Trust). On July 28, 1971, The Charleston National Bank of Charleston, W. Va. (CNB) loaned Morey, Inc. the sum of $ 325,000. The corporation signed a promissory note for each of the loans, both of which were guaranteed by petitioner individually. [4] At the time the loans and guarantees were made, the financial statements filed with its Federal income tax return showed Morey, Inc. to be in a solvent condition. *106 Beginning in the latter part of 1971 and continuing into early 1972, Morey, Inc. suffered severe financial losses on some of its construction contracts. As a result of these losses, the company was unable to fulfill many of its contractual obligations. Consequently, by May of 1972 Great American, as surety, was called upon to complete Morey, Inc.'s performance on several of its contracts. In so doing, Great American or its agents, for all intents and purposes, assumed complete control of the operation of Morey, Inc. By October 1972, Great American, in an effort to minimize its losses, [5] placed liens on all of the business assets of Morey, Inc. which were not already pledged as security on loans that Morey, Inc. had outstanding with other creditors. Because of the financial misfortune which had befallen it, Morey, Inc. was unable to pay many of its creditors. To assist it in this regard, petitioner in 1972 paid with his personal funds a total of $ 334,633.30 to Union Trust and CNB, which amount represented the balance owing on the two *107 loans made to Morey, Inc. which he had guaranteed. The payments on the guarantees will hereinafter be referred to collectively as the "payments". In addition, throughout 1972 petitioner advanced to Morey, Inc. a total of $ 455,328.70. Of this amount, $ 280,857.47 was used to satisfy an amount owing to Morey, Inc. by petitioner. The balance, $ 174,471.23, represents a portion of the total amounts disputed herein, and will hereinafter be referred to as the "advances" or as the "amount advanced." These advances were used by Morey, Inc. to pay certain of its financial obligations. The financial data accompanying petitioner's and Morey, Inc.'s 1972 Federal income tax returns shows that Morey, Inc.'s liabilities exceeded its assets on August 31, 1972, by an amount in excess of $ 185,000. By the end of 1972 liens had been placed on most, if not all, of Morey, Inc.'s assets.Further, the company could not pay its debts when they came due which led to foreclosures on many of its assets in 1973.
Of the payments made by petitioner in 1972, he recovered about $ 6,000 from Morey, Inc. in 1973. In computing his taxable income for 1972 petitioner claims that he is entitled to deduct $ 509,104.53 *108 [6] as an ordinary loss under either section 165 or section 166. OPINION In 1970 and 1971 petitioner was the sole owner of Morey, Inc., a general excavation company. During those years the corporation received loans totaling $ 354,150 from two separate banks, Union Trust and CNB. Petitioner personally guaranteed these loans. In the latter part of 1971 and continuing into 1972, the corporation suffered severe losses and was unable to meet its obligations. Because of this, petitioner pursuant to his guarantees paid to Union Trust and CNB in 1972 the balance owing by the corporation in the amount of $ 334,633.30. In addition, petitioner at various times in 1972 made other advances to, or on behalf of, the corporation in the amount of $ 174,471.23. The question presented is the extent to which these amounts are properly deductible in 1972. Resolution of this question will depend upon whether the advances and payments constituted bona fide *109 loans or contributions to the capital of the corporation. Petitioner contends that the amounts in question are deductible under section 165(c)(1) and (2) or, alternatively, under section 166(a). Respondent argues as follows: First, the advances and payments made by petitioner are contributions to the capital of the corporation and are not deductible. Second, if a valid debtor-creditor relationship existed between the corporation and the petitioner with respect to the amounts in question, then any loss is not deductible in 1972 because the debts in question were not worthless in that year. Finally, respondent maintains that if the debts are worthless in 1972, they are nonbusiness rather than business bad debts. Based on the record as a whole, we believe that the payments made by petitioner, as guarantor, to Union Trust and CNB in the amount of $ 334,633.30 represent a bona fide debt deductible, if at all, under section 166. Furthermore, we agree with respondent that the other advances made by petitioner to, or on Morey, Inc.'s behalf, in the amount of $ 174,471.23 constitute contributions to capital. [7]
*110 In resolving the question of whether advances and payments of the type in the present case constitute debt or equity, the courts have considered a number of factors including: the relationship of the parties; whether the corporation is adequately capitalized; whether interest was paid or payable on the amounts advanced; whether an outsider would have made a similar advance without security; and whether such advances were placed at the risk of the business and thus constituted risk capital. See Gilbert v. Commissioner,262 F.2d 512 (2d Cir. 1959), cert. denied 359 U.S. 1002 (1959); Yale Avenue Corp. v. Commissioner,58 T.C. 1062 (1972). With the above factors in mind, we agree with respondent and hold that the $ 174,471.23 in advances represents a contribution to Morey, Inc.'s capital. To begin with, the record does not indicate that any interest was provided for on the advances, no note was given, nor was any collateral offered as security. Further, there was no evidence of an agreement establishing the terms of the advances or their repayment. However, even if we were to attach a minimal amount of significance to the preceding *111 factors, taking into consideration the circumstances surrounding the making of the advances, we believe that there is one overriding factor supporting our conclusion that such amounts are contributions to capital. Specifically, at the time of his making the advances, the corporation's financial condition was such that petitioner could not have had any justifiable expectation of repayment of such amounts in the normal course of events. See Yale Avenue Corp. v. Commissioner,supra, at 1073. To counter this strong factor militating in favor of the conclusion that the payments constituted equity, petitioner argues that he advanced the funds on the corporation's behalf because of his agreement to indemnify Great American for the losses it sustained a surety for Morey, Inc. Thus, petitioner contends, these advances were not made in his capacity as shareholder, but in his capacity as indemnitor of Great American. While petitioner probably considered his agreement with Great American in making the advances, we do not believe there is sufficient evidence in the record to support his contention that the advances were made pursuant to his agreement with Great American. *112 To the contrary, we believe the evidence when viewed in its entirety indicates that he made the advances in his capacity as a shareholder of a corporation hoping to prevent his investment from being wholly lost. Accordingly, we hold that the $ 174,471.23 is a contribution to the capital of Morey, Inc., and is to be added to the basis of petitioner's stock. See United States v. Generes,405 U.S. 93 (1972). While the $ 334,633.30 paid to Union Trust and CNB contains many of the same indicia of equity as in the case of the advances discussed above, we nevertheless hold such payments constitute a bona fide debt between petitioner and the corporation. In this regard, we are convinced from the record as a whole that these payments, unlike the advances, were indeed made by petitioner in his capacity as guarantor. As distinguished from the situation involving the advances, the determination of whether a payment by a guarantor gives rise to a bona fide debt is made by an examination of the circumstances existing, not at the time of payment of the guarantee, but at the time the guarantee is given. Roussel v. Commissioner,37 T.C. 235 (1961). Specifically, *113 if at the time the guarantee is made, the debtor is solvent and the guarantor does not expect to be called upon to pay without reimbursement, any payments subsequently made by the guarantor will be considered to be a debt notwithstanding the insolvency of the debtor at the time payment is actually made. Roussel v. Commissioner,supra, at 242-243. In the instant case, at the time petitioner made the guarantee, the corporation was solvent. Moreover, after listening to petitioner's testimony, we do not think that he intended the funds borrowed from Union Trust and CNB to become a part of the corporation's capital, i.e., he did not expect to be called upon to repay the debts without reimbursement. Thus, we hold that the amounts paid by petitioner to Union Trust and CNB gave rise to an indebtedness due petitioner by the corporation.
Next we must determine whether the debt between petitioner and the corporation arising out of his guarantee payments qualifies as a business or a nonbusiness bad debt. To qualify as a business bad debt deductible under section 166(a), at the time of worthlessness the debt must have a "proximate" relationship to the taxpayer's trade *114 or business. Sec. 1.166-5(b)(2), Income Tax Regs. In making the determination of whether a debt bears such a proximate relationship, the taxpayer has the burden of proving that his dominant motive for engaging in the transaction which gave rise to the debt was attributable to his business. United States v. Generes,supra.In the instant case, as in Generes, the critical time for examining the petitioner's motives is at the moment he signed the guarantee agreement with Union Trust. Unfortunately for petitioner, there is little evidence in the record to support his contention that his dominant motive at the time of signing the guarantee agreement was attributable to his business. Hence, we have no alternative but to hold that petitioner's debt is a non-business bad debt within the meaning of section 166(d). Finally, we must decide the extent to which any of the foregoing advances and payments made by petitioner are deductible in 1972. Because we have held that the debt which arose upon petitioner's payment to Union Trust and CNB does not constitute a business debt, such amount is deductible in 1972 only if it became wholly worthless in that *115 year. Section 166(d). Before a debt can be considered wholly worthless the "last vestige of value" must have disappeared. Bodzy v. Commissioner,321 F.2d 331, 335 (5th Cir. 1963). The evidence in the record shows that by the end of 1972, Morey, Inc. was hopelessly insolvent. The corporation could no longer meet its obligations when they fell due. Most, if not all, the corporation's operating assets were encumbered with liens by creditors who probably would not be fully paid. The corporation's operations were conducted by Great American, one of its creditors. After 1972 the corporation could no longer obtain a performance bond and consequently was unable to attract any significant business. For all practical purposes, as far as petitioner was concerned, the corporation ceased doing business by the end of 1972. In this light it would appear that petitioner's debt became wholly worthless in 1972. However, the record shows that petitioner withdrew about $ 6,000 from the corporation in 1973. Albeit this sum is small when compared with the total payment made by petitioner to Union Trust and CNB, nevertheless it shows that petitioner's debt was not wholly *116 worthless in 1972. Accordingly, we hold that such amount is not deductible in 1972. However, we do believe, for the reasons outlined above, that petitioner's stock in Morey, Inc. became worthless in 1972. It is clear that by the end of 1972, petitioner would never be able to recoup any of his stock investment. Hence, we hold that petitioner may deduct in 1972 pursuant to section 165(g), and subject to the limitations contained in sections 1211 and 1212, his basis in his stock of Morey, Inc.[8]
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. The deficiencies determined by respondent for the years 1969 through 1971 are reflective of his disallowance of a claimed net operating loss for 1972 which had been based upon the deductions disputed herein.↩
3. During the years in issue, petitioner was employed as the president of Morey, Inc. and owned 100 percent of its stock through an initial capital investment of $ 200,000. As Morey, Inc.'s president, petitioner was paid an annual salary of $ 30,000 in 1969 and 1970. In 1971 and 1972 petitioner did not receive any compensation from Morey, Inc.↩
4. The loan with Union Trust was to be repaid in 24 monthly installments beginning in November 1970. The loan with CNB was to be repaid in one lump sum on December 31, 1971. At some point, this latter payment date was extended by the parties to March 1, 1973.↩
5. Great American has claimed in a pending lawsuit that it suffered losses in excess of $ 2 million dollars as surety for Morey, Inc.↩
6. This amount is computed as follows: ↩
Total amount paid by petitioner
$ 789,962.00
on behalf of Morey, Inc.
Less: Amount due to Morey,
Inc. by petitioner
280,857.47
Net amount of claimed
$ 509,104.53
deduction
7. At the outset, we reject petitioner's argument that any of the amounts in question, under the facts as presented, are deductible under section 165(c)(1) and (2). Stratmore v. United States,420 F.2d 461 (3d Cir. 1970), cert. denied 398 U.S. 951 (1970); Martin v. Commissioner,52 T.C. 140 (1969), affd. per curiam 424 F.2d 1368 (9th Cir. 1970), cert. denied 400 U.S. 902 (1970); Putnam v. Commissioner,352 U.S. 82 (1956); Whipple v. Commissioner,373 U.S. 193 (1963). Furthermore, neither party has referred us to, nor have we found, any West Virginia law which would warrant a contrary conclusion. See Horne v. Commissioner,59 T.C. 319, 333 (1972), affd. 523 F.2d 1363↩ (9th Cir. 1975), cert. applied for June 23, 1978.
8. In this connection, petitioner's basis in his stock includes the amount of $ 174,471.23 which we have previously determined constitutes a contribution to capital.↩