HUTCHINS STANDARD SERVICE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ARLEIGH H. HUTCHINS and ISABEL L. HUTCHINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hutchins Standard Service v. Commissioner
Docket Nos. 5074-78, 5098-78.
United States Tax Court
T.C. Memo 1981-33; 1981 Tax Ct. Memo LEXIS 717; 41 T.C.M. (CCH) 777; T.C.M. (RIA) 81033; January 27, 1981. Edward F. Neubecker, for the petitioners. Rogelio A. Villageliu, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: Petitioner
Year
Deficiency
Hutchins Standard Service
1974
$ 312.41
1975
284.00
Arleigh H. Hutchins and
1973
$ 768.16
Isabel L. Hutchins
1974
2,427.92
1975
2,268.96
*718 Due to concessions by petitioners, [1] the only issue remaining for decision is whether amounts received by the individual petitioners during 1973, 1974, and 1975 are taxable dividends, under sections 301 [2] and 316, or nontaxable repayments of a loan. FINDINGS OF FACT Petitioner Hutchins Standard Service (hereinafter the corporation) is a Wisconsin corporation with its principal office at 3950 North Lilly Road, Brookfield, Wisconsin.It filed Federal corporation income tax returns for 1974 and 1975 with the Internal Revenue *719 Service Center, Kansas City, Missouri. Petitioners Arleigh H. Hutchins (hereinafter petitioner) and Isabel L. Hutchins, husband and wife, filed joint Federal income tax returns for 1973, 1974, and 1975 with the Internal Revenue Service Center, Kansas City, Missouri. At the time their petition was filed, they were legal residents of Hartland, Wisconsin. Petitioner has been engaged in the business of operating a service station at the location of the corporation's principal office since 1960. Prior to April 12, 1972, the business was operated as a sole proprietorship. On that date, the business was incorporated and petitioner transferred all of the proprietor-ship's assets, including inventory, equipment, cash, and accounts receivable, to the corporation. In exchange for the assets transferred to the corporation, petitioner and his wife each received 50 percent (50 shares each) of the stock of the corporation. This transaction fell within the provisions of section 351, and petitioners recognized no gain or loss on the exchange. The book value of the assests at the time they were transferred to the corporation was $ 31,979.23. [3] Of this amount, only $ 500 was assigned *720 to the 100 shares of stock issued by the corporation and was treated as paid-in capital on the corporate books. The balance, $ 31,479.23, was treated as being a "loan" from petitioner to the corporation.
No written instrument was executed to evidence petitioner's "loan" to the corporation, and he did not retain a security interest in any of the property transferred to it. There was no agreement for the payment of interest on the "loan," and none has been paid. No due date or fixed payment schedule was established with respect to repayment of the principal amount of the "loan." Instead, to the extend that profits allowed, petitioner periodically withdrew money from the corporation and applied it in reduction of the "indebtedness" to him. At all times relevant herein, petitioner has controlled and made all management decisions for the corporation. Petitioner and his *721 wife have at all times owned 100 percent of the corporation's stock. During 1973, 1974, and 1975, petitioner received, directly or constructively, distributions from the corporation in the respective amounts of $ 14,845.44, $ 9,000, and $ 9,649.80. [4] At least a portion of each of these distributions to petitioner was treated by the corporation as being made in repayment of the "loan" described above. [5] No portion of any of the distributions was reported as a dividend on petitioners' Federal income tax returns for the years in issue. Respondent determined that the transfer of the assets of the sole proprietorship to the corporation was in reality a contribution to capital by petitioner, rather than a loan. Accordingly, he further determined that the distributions *722 to petitioner during 1973, 1974, and 1975, were taxable as dividends to the extent of the current and accumulated earnings and profits of the corporation available for distribution during those years. OPINION The issue for decision is whether certain distributions from the corporation to petitioner should be characterized as repayments on a loan or dividends. Resolution of this issue depends on the further question whether the transfer of assets to the corporation at the time of its formation gave rise to an indebtedness or, instead, constituted a contribution to capital by petitioner. This is essentially a question of fact upon which petitioner bears the burden of proof. Sherwood Memorial Gardens v. Commissioner,350 F.2d 225 (7th Cir. 1965), affg. 42 T.C. 211 (1964); Gilbert v. Commissioner,262 F.2d 512 (2d Cir. 1959), affg. a Memorandum Opinion of this Court, cert. denied 359 U.S. 1002 (1959). [6]
*723 As both petitioner and respondent have recognized, no signle factor standing alone is determinative of whether a shareholder's advance is an equity investment in or a loan to a corporation. John Kelley Co. v. Commissioner,326 U.S. 521 (1946). In the final analysis, the answer depends on the particular facts and circumstances of each case. There are, however, a number of criteria that have generally been focused on by the courts in determining the true nature or substance of a shareholder advance that is in form a loan. [7] These include the intent of the parties to the transaction, the risk involved, the formal indicia of the arrangement, the timing of the advance with reference to the organization of the corporation, and comparability of the advance with loans by independent creditors. E.g., In re Indian Lake Estates, Inc.,448 F.2d 574 (5th Cir. 1971); Fin Hay Realty Co. v. United States,398 F.2d 694 (3d Cir. 1968); Burr Oaks Corp. v. Commissioner,43 T.C. 635 (1965), affd. 365 F.2d 24 (7th Cir. 1966). *724 After considering the record in its entirety, we think it clear that the assets transferred to the corporation in this case were placed at the risk of the business and constituted an equity investment, rather than a "loan." See and compare Northeastern Consolidated Co. v. United States,406 F.2d 76 (7th Cir. 1969), cert. denied 396 U.S. 819 (1969); Arlington Park Jockey Club v. Sauber,262 F.2d 902 (7th Cir. 1959); Gooding Amusement Co. v. Commissioner,236 F.2d 159 (6th Cir. 1956), affg. 23 T.C. 408 (1954), cert. denied 352 U.S. 1031 (1957). It is significant that the corpus of the "loan" consisted of the operating assets of the sole proprietorship--the very essence of the service station business that was to be continued by the corporation.In addition, notwithstanding petitioner's espoused intention to make "a loan of a sort" and the treatment of the transaction as a loan on the corporate books, none of the characteristics typically associated with a loan are present in this case. Compare Burr Oaks Corp. v. Commissioner,supra, with Litton Business Systems, Inc. v. Commissioner,61 T.C. 367 (1973). *725 The "loan" was not evidenced by a debt instrument of any kind. This lack of formality, as petitioner points out, may not be solely determinative of the status of a shareholder's advance to a closely-held or solely-owned corporation. See Litton Business Systems, Inc. v. Commissioner,supra. However, petitioner made no arrangement whatsoever for the payment of interest, and the "loan" had no maturity date. It is clear from the record that he did not expect any payments to be made to him except to the extent that the corporation's business was profitable. It cannot seriously be argued that an independent creditor, interested primarily in the repayment of principal and not the long-term financial success of the business, would have extended credit to the corporation on such terms. Although petitioner may genuinely have conceived of the transfer as a "loan," in the sense that he hoped to recover his initial investment over a 3-to-4-year period, it does not follow that the transfer resulted in a debtor-creditor relationship for tax purposes. On the basis of the record before us, we cannot characterize the transaction as a loan within the generally accepted *726 meaning of that term. Accordingly, we hold for the respondent. [8]
To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Petitioner Hutchins Standard Service has conceded that it is not entitled to certain depreciation deductions for 1974 and 1975. In addition, although the petitioners of both Hutchins Standard Service and the individual petitioners herein allege error with respect to respondent's determination that personal use of a corporate automobile amounted to a dividend, no evidence or argument was presented by petitioners to rebut respondent's determination. Accordingly, we have treated this issue as abandoned by petitioners. ↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
3. The stipulation indicates that the book value of the assets was $ 31,829.33. However, an examination of the balance sheets attached to the corporation's income tax returns and the explanation attached to respondent's notice of deficiency in docket No. 5098-78, indicates that the stipulation is in error.↩
4. These figures do not include distributions to petitioner in the form of salaries, wages, bounses, or the value of the personal use of a corporate automobile. ↩
5. It was stipulated that the corporation did not apply $ 7,000 of the 1973 distribution and $ 8,000 of the 1974 distribution in reduction of the "loan" until an adjusting entry was made to the corporate books at the end of 1975 in the amount of $ 15,000.↩
6. Sec. 385 authorizes the Secretary of the Treasury to establish, by regulations, standards for distinguishing equity interests from indebtedness for all purposes of the Internal Revenue Code. We note that regulations under this section were adopted Dec. 29, 1980 (T.D. 7747, 1981-     I.R.B.    ↩) but are not effective until Apr. 30, 1981.
7. Throughout the proceedings in this case, petitioner has referred to the transfer of assets as a "loan." Although his position might more accurately be characterized as being that there was a sale of the assets in return for a short-term obligation of the corporation, for ease of reference we adopt petitioner's terminology.↩
8. As previously noted, the corporate petitioner has conceded that respondent's disallowance of certain depreciation deductions for 1974 and 1975 was correct, and we have treated both the corporate and individual petitioners as having abandoned an issue relating to the personal use of a corporate automobile during those years. Therefore, no adjustment need be made to the computation of earnings and profits made by respondent in the notice of deficiency for purposes of determining the amount of the dividends received by petitioner.↩