MILTON C. STEINER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; NORMA D. STEINER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Steiner v. Commissioner
Docket Nos. 17355-79, 17356-79.
United States Tax Court
T.C. Memo 1981-212; 1981 Tax Ct. Memo LEXIS 534; 41 T.C.M. (CCH) 1392; T.C.M. (RIA) 81212; April 28, 1981. Harvey J. Eger, for the petitioners. Edward J. Laubach, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: In these consolidated cases respondent determined the following deficiencies in petitioners' Federal income taxes: Milton C. Steiner, Dkt. No. 17355-79
Year
Deficiency
1972
$ 19,352.13
1973
4,551.97
1974
7,940.00
1975
9,031.00
*535 Norma D. Steiner, Dkt. No. 17356-79
Year
Deficiency
1972
$ 19,352.13
1973
4,551.97
1974
7,940.00
1975
9,031.00
1976
3,972.81
The issues presented for decision are: 1. Whether advances made by petitioner Milton C. Steiner to Steiner-Trucraft, Inc. in 1970 and 1972 were contributions to capital or loans. 2. If the advances to Steiner-Trucraft, Inc. were loans, whether they became business or nonbusiness bad debts in the taxable year 1975. 3. Whether the petitioners had a net operating loss for the taxable year 1975 which they are entitled to carry back to the taxable years 1974, 1973 and 1972 and which petitioner Norma D. Steiner is entitled to carry forward to the taxable year 1976. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time the petitions were filed in these cases Milton C. Steiner (herein referred to individually as the petitioner) resided in New York, New York, and Norma D. Steiner resided in Pittsburgh, Pennsylvania. The petitioners, as husband and wife, filed joint Federal income tax returns for the years 1972 through 1975 with the Internal Revenue Service Center at Philadelphia, *536 Pennsylvania. They reported their income and deductions on the basis of cash receipts and disbursements. Petitioners were divorced in 1976. Norma D. Steiner filed a Federal income tax return for the year 1976 as an unmarried head of household. The return was filed with the Internal Revenue Service Center in Philadelphia. In 1941 Joseph Steiner, the petitioner's father, founded the Steiner Manufacturing Company, the predecessor of Steiner-Trucraft, Inc. (hereinafter referred to as Steiner-Trucraft), which was incorporated in Pennsylvania in 1946. Steiner-Trucraft had its principal place of business in Saltsburg, Pennsylvania, at all times material herein. Steiner-Trucraft was engaged in the manufacture of cloth draperies and curtains. The Steiner name was well known in the drapery business. The company employed approximately 200 employees. The stock of Steiner-Trucraft consisted of 2,500 shares of 6 percent noncumulative, nonvoting preferred stock ($ 100 par value) and 1,000 shares of common stock ($ 1 par value). Mollie Steiner, the petitioner's mother, owned 80 percent of the preferred stock. Prior to February 26, 1969, the common stock of Steiner-Trucraft was *537 held as follows: Percent
Stockholder
of Ownership
Joseph Steiner, President
55%
Milton C. Steiner, Exec. Vice-President
10%
Philip Eisenberg, Vice-Pres. & Salesman
10%
Stanley Ettin, Vice-Pres. & Salesman
10%
Kyle Steiner, Secretary
10%
Jerry Luxenberg, Treasurer
5%
100%
On February 26, 1969, Joseph Steiner died, and the stock of Steiner-Trucraft was redistributed as follows: Percent
Stockholder
of Ownership
Milton C. Steiner
28.4%
Philip Eisenberg
10%
Stanley Ettin
10%
Kyle Steiner
28.3%
Louis Steiner
18.3%
Harvey Pollack
5%
100%
From February 26, 1969 to 1975, the petitioner was employed as president of Steiner-Trucraft. Prior to Joseph Steiner's death, Steiner-Trucraft had profits in excess of $ 38,000 for the fiscal years ended May 31, 1968 and May 31, 1969. After Joseph Steiner's death, Steiner-Trucraft experienced net operating losses of $ 662,601.68, $ 111,158, and $ 66,006 for the fiscal years ended May 31, 1970, 1971 and 1972, respectively. In order to avoid forcing Steiner-Trucraft into bankruptcy and to provide for the deferred payment of their claims, the general creditors *538 of the corporation, Milton C. Steiner, Mollie Steiner, Dorothy D. Davis, and Steiner-Trucraft executed a Creditors' Committee Agreement dated May 14, 1970. Under the agreement the petitioner advanced the sum of $ 145,000 to Steiner-Trucraft on May 14, 1970. On November 30, 1970, about 35 percent of the creditors' claims were paid and the Creditors' Committee Agreement was amended to extend the due date of the remaining payments to May 31, 1972. On or about September 1972, the petitioner advanced Steiner-Trucraft an additional sum of $ 18,333.33. This advance was also accompanied by an advance of $ 48,333 by Jerry Luxenberg and an advance of $ 33,333 by Harvey Pollack. No security was provided by Steiner-Trucraft for the advances made by the petitioner to it in 1970 and 1972. Unable to meet its current operating costs, Steiner-Trucraft was purchased by M. Lowenstein & Sons, Inc. in December of 1972 and it acquired control of Steiner-Trucraft at that time. According to the Lowenstein purchase agreement of December 1972, the petitioner received a two-year employment contract as president at a base salary of $ 40,000. Paragraph 15 of the Creditors' Committee Agreement *539 provided that the petitioner shall "loan and advance" the sum of $ 145,000 to Steiner-Trucraft. Both the Lowenstein stock purchase agreement and the subordination agreement dated September 1, 1972 refer to the petitioner's advances as "indebtedness." The financial reports of Steiner-Trucraft classified the petitioner's advances as subordinated notes payable. Both advances made by the petitioner to Steiner-Trucraft in 1970 and 1972 were not evidenced by any promissory note. Dorothy Davis was the petitioner's mother-in-law and was not a shareholder of Steiner-Trucraft. Her advance to Steiner-Trucraft in 1970 was evidenced by a promissory note. The petitioner's 1970 advance did not have a fixed repayment date or schedule and there were no interest provisions. A repayment schedule for the petitioner's 1972 advance of $ 18,333.33 is contained in the subordination agreement dated September 1, 1972. It also provided for 9 percent annual interest on the advance. The petitioner receiver interest payments of $ 412.50 during 1972 on the advance. Both the 1970 and 1972 advances were subordinated to the claims of unsecured general creditors whose claims arose after May 14, 1970, and *540 to the claims of the unsecured general creditors who deferred their claims in the Creditors' Committee Agreement of May 14, 1970. The petitioner has never received any repayment of the principal amount of $ 163,333.33 advanced to Steiner-Trucraft in 1970 and 1972. At the time of the 1970 advance, the petitioner's advance of $ 145,000 was subordinated to unsecured general creditors' claims totaling $ 1,315,292. At approximately the time of the 1972 advance, the petitioner's advances of $ 163,333.33 were subordinated to unsecured general creditors' claims totaling $ 736,122. Steiner-Trucraft reported operating deficits on its financial reports for the fiscal years ended May 31, 1970, May 31, 1971 and May 31, 1972 of $ 482,724, $ 593,882 and $ 659,889, respectively. At the time the petitioner made his advances to Steiner-Trucraft in 1970 and 1972 no outside lender would have loaned money to Steiner-Trucraft. As of May 31, 1969, total liabilities of Steiner-Trucraft were $ 1,228,187 while stockholders' equity was $ 433,802. The debt-equity ratio of Steiner-Trucraft on that date was 2.8 to 1. As of May 31, 1970, total liabilities of Steiner-Trucraft were $ 2,684,068 *541 while stockholders' equity was a deficit of $ 228,799.57. As of August 31, 1972, total liabilities of Steiner-Trucraft were $ 2,953.948 while stockholders' equity was a deficit of $ 405,964.12. By 1972, Jerry Luxenberg, an employee of Steiner-Trucraft, held 337 shares of its common stock. By 1972, Harvey Pollack, an employee of Steiner-Trucraft, held 200 shares of its common stock. The petitioner was employed by Steiner-Trucraft from 1955 to 1975, and he held the positions of salesman, vice-president, and president. During the years 1970 through 1974 the petitioner worked full time as president of Steiner-Trucraft. His primary source of income was his salary as president of Steiner-Trucraft. His salary was approximately $ 37,000 during the years 1970 through 1972. He received a salary of $ 42,712 from Steiner-Trucraft in 1974. In 1975, the petitioner terminated his employment with Steiner-Trucraft, then a wholly owned subsidiary of M. Lowenstein & Sons, Inc. After leaving Steiner-Trucraft in January 1975, the petitioner secured employment with the Sunrise Drapery Company within two weeks. He was employed by that company as its president and received a salary during *542 1975 of $ 47,770. He worked for Sunrise Drapery Company for about one and a half years and then secured his present employment with another textile manufacturer, Gemini Home Fashions. Louis Steiner, the petitioner's brother, was employed by Steiner-Trucraft as a salesman and earned approximately the same salary as the petitioner. Kyle Steiner, the petitioner's brother, was employed by Steiner-Trucraft as a factory worker and earned about $ 15,000 per year. The petitioner purchased his stock in Steiner-Trucraft for approximately $ 1,000. On their Federal income tax return for 1975 the petitioners claimed that the $ 163,333.33 advanced to Steiner-Trucraft was deductible as a business bad debt in the amount of $ 40,590.91 and carried the excess amount back to the taxable years 1974, 1973 and 1972. Petitioner Norma D. Steiner carried the remaining amount forward to the year 1976. ULTIMATE FINDINGS OF FACT 1. Petitioner's advances to Steiner-Trucraft in 1970 and 1972 were contributions to capital. 2. Petitioners are not entitled to treat the advances as business bad debt deductions for the taxable year 1975 and they did not incur a net operating loss for that year. *543 3. Petitioners are not entitled to a net operating loss carryback to the years 1974, 1973 and 1972, and the petitioner Norma D. Steiner is not entitled to a net operating loss carry forward to the year 1976. OPINION Petitioners contend that the advances made to Steiner-Trucraft in 1970 and 1972 were bona fide business loans under section 166[1] and, when it became clear in 1975 that the advances would not be repaid, they claimed them as a business bad debt deduction on their 1975 Federal income tax return. Their position is that the petitioner's dominant motivation in making the advances was to protect his salary as president of the corporation rather than his investment therein. Respondent, on the other hand, contends that the advances represent contributions to the capital of Steiner-Trucraft rather than bona fide loans. Alternatively, respondent argues that, if the advances were loans, they constitute nonbusiness bad debts because the petitioner's dominant motivation in making the advances was to protect his investment in the corporation. *544 Section 166(a) allows as a deduction any debt which becomes worthless within the taxable year. Section 166(d) distinguishes between business and nonbusiness bad debts. However, before the petitioner's advances can be characterized as either business or nonbusiness bad debts, the petitioner must first establish that his advances to Steiner-Trucraft in 1970 and 1972 were bona fide loans rather than contributions to the capital of the corporation. Fischer v. United States, 441 F. Supp. 32, 36 (E.D. Pa. 1977), affd. by unpublished opinion (3d Cir., August 11, 1978). Section 1.166-1(c), Income Tax Regs., provides that only a bona fide debt qualifies for purposes of section 166; and a bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A contribution to capital is not considered a debt for purposes of section 166. The characterization of advances to a corporation by a shareholder is a question of fact to be determined from all the facts and circumstances with the burden on the taxpayer to establish that the advances were loans. *545 Gilbert v. Commissioner, 262 F.2d 512, 513 (2d Cir. 1959), cert. denied 359 U.S. 1002 (1959); P. M. Finance Corporation v. Commissioner, 302 F.2d 786, 789 (3d Cir. 1962). A multitude of cases have attempted to set standards for determining the debt-equity issue. [2] In Fin Hay Realty Co. v. United States, 398 F.2d 694, 696 (3d Cir. 1968), cited by the parties herein, the following criteria were used to evaluate the true nature or substance of an investment which is in the form of a debt: (1) The intent of the parties; (2) The identity between creditors and shareholders; (3) The extent of participation in management by the holder of the instrument; (4) The ability of the corporation to obtain funds from outside sources; (5) The "thinness" of the capital structure in relation to debt; (6) The risk involved; (7) The formal indicia of the arrangement; (8) The relative position of the obligees as to other creditors regarding the payment of interest and principal; (9) The voting power of *546 the holder of the instrument; (10) The provision of a fixed rate of interest; (11) A contingency on the obligation to repay; (12) The source of the interest payments; (13) The presence or absence of a fixed maturity date; (14) A provision for redemption by the corporation; (15) A provision for redemption at the option of the holder; and (16) The timing of the advance with reference to the organization of the corporation. However, as the Court of Appeals pointed out, no single criterion or group of criteria is decisive in this determination and the factors should only be used as aids in analyzing the realties of the transaction. Fin Hay Realty Co. v. United States, supra at 697. The parties here have emphasized the facts with respect to various criteria in support of their respective positions in their efforts to provide a conclusive answer to this close and difficult issue. Our analysis of the relevant criteria convinces us that the petitioner's advances to Steiner-Trucraft more closely resemble contributions to capital rather than loans. With respect to the intent of the parties, the petitioner testified that he and everyone else who participated *547 in the transactions considered the advances loans to Steiner-Trucraft. However, conclusory statements that the parties intended to create debts have been accorded little weight by the courts. Fischer v. United States, supra at 37. Where a closely held corporation is involved, form does not always correspond to the nature of a transaction because the parties can create whatever appearance may be of tax benefit to them despite the economic reality of the advance. This is particularly so where a shareholder can have the funds he advances to a corporation treated as corporate obligations instead of contributions to capital without affecting his proportionate equity interest. Fin Hay Realty Co. v. United States, supra at 697. Hence we attach little weight to petitioner's statements that he intended his advances to be loans to the corporation. Diamond Bros. Company v. Commissioner, 332 F.2d 725, 730-731 (3d Cir. 1963). A second factor to consider is the formal indicia of the arrangement which purportedly creates a debtor-creditor relationship. The petitioner stresses that paragraph 15 of the Creditors' Committee Agreement, *548 executed on May 14, 1970, states that Milton Steiner shall "loan and advance" to Steiner-Trucraft the sum of $ 145,000. Paragraph 4 of the Lowenstein stock purchase agreement also refers to the petitioner's advances as "indebtedness", as does the subordination agreement dated September 1, 1972. Finally, the petitioner emphasizes that all the financial statements of Steiner-Trucraft during the fiscal years ended May 31, 1970 through May 31, 1972 classified the advances as subordinated notes payable. Yet, despite these formal indications that the advances were loans rather than contributions to capital, other formalities normally associated with debt instruments are lacking for both of the advances. First, neither advance was ever evidenced by a promissory note. This fact is significant because Dorothy Davis, the petitioner's mother-in-law who was not a shareholder of Steiner-Trucraft, did receive a promissory note for her advance in 1970. Second, neither advance, if viewed as a loan, had a fixed maturity date. The only written evidence of the first advance of $ 145,000 in 1970 is the Creditors' Committee Agreement which fails to specify a repayment date or schedule. The subordination *549 agreement dated September 1, 1972 does specify a repayment schedule but only for the $ 18,333.33 advanced in 1972. The Lowenstein Agreement specifies a repayment schedule for both advances but is irrelevant because it was executed after the advances had been made. Diamond Bros. Company v. Commissioner, supra at 731. Third, no interest was specified on the $ 145,000 advance. A 9 percent interest rate was provided with respect to the 1972 advance. Fourth, both advances were subordinated to the claims of unsecured general creditors and were unsecured. Finally, neither advance was accompanied by any provisions concerning the right of either the holder or the corporation to redeem the loans; nor was there any provision for the creation of a sinking fund to effect repayment. While the enumerated formalities and labels accompanying the petitioners' advances are some evidence of the transaction's true nature, they are not decisive. Further inquiry must be made into the economic substance of the purported loans. *550 Motel Corp. v. Commissioner, 54 T.C. 1433, 1436 (1970); Zivnuska v. Commissioner, 33 T.C. 226, 235 (1959). In fact, advances have been ultimately found to be contributions to capital even where the formal indicia of a debt obligation were meticulously observed and where, as here, interest was paid and the advances were reported on the corporate books and records as debt. See and compare Gilboy v. Commissioner, T.C. Memo. 1978-114; Thaler v. Commissioner, T.C. Memo. 1978-24; and Post v. Commissioner, T.C. Memo. 1979-419. One method of determining the economic substance of a purported corporate loan is to ascertain whether the funds were advanced "with reasonable expectations of repayment regardless of the success of the venture or were placed at the risk of the business." See Gilbert v. Commissioner, 248 F.2d 399, 406 (2d Cir. 1957). The petitioner's expectation of repayment of the $ 163,333.33 advanced to Steiner-Trucraft was completely dependent on the future financial success of the corporation. He testified, "And if the plan worked, I could start seeing that money in a couple *551 years." The possibilities of the petitioner receiving any repayment of the advances were even more remote than his statement suggests. Both of the advances were subordinated to the claims of unsecured general creditors whose claims arose after May 14, 1970 and to the claims of those creditors who deferred the payment of their claims in the Creditors' Committee Agreement. At the time of the first advance in 1970, this subordination feature meant that unsecured claims of $ 1,315,292 would have to receive payment in full before the petitioner could even begin to receive any repayment of his advance. At the time of the second advance in 1972, the petitioner was still subordinated to general creditors' claims totaling $ 736,122. In addition to the subordination aspect of the petitioner's advances, the expectation of repayment was further reduced by the fact that Steiner-Trucraft was insolvent when the advances were made, having suffered operating deficits of $ 482,724, $ 593,882 and $ 659,889 for the fiscal years ended May 31, 1970, May 31, 1971 and May 31, 1972, respectively. Advances made under such rapidly declining financial conditions could hardly have been made with a reasonable *552 expectation of repayment. Funk v. Commissioner, 35 T.C. 42, 50 (1960). Where advances are placed at the risk of the business, they are typically viewed as contributions to capital rather than loans. See Gilbert v. Commissioner, 262 F.2d at 513; Motel Corp. v. Commissioner, supra at 1436. An economic inquiry closely related to the "expectation of repayment" analysis is the so-called "independent creditor" test. According to this test, shareholder advances are compared with the form which a similar transaction would have taken if it had been between the corporation and an outside lender. If the shareholder's advance is far more speculative then what an outsider would make, it is obviously a loan in name only. Fin Hay Realty Co. v. United States, 398 F.2d at 697. Given the financial situation of Steiner-Trucraft at the time the petitioner made the advances in 1970 and 1972, it is highly unlikely that a prudent investor would have loaned the corporation $ 166,333.33 without a fixed repayment date, without any interest on a $ 145,000 loan and without any security to guarantee repayment. *553 Moreover, an outside lender would not have agreed to subordinate his loan to the claims of general creditors under the circumstances. See Fin Hay Realty Co. v. Commissioner, supra at 698; Joseph Lupowitz Sons, Inc. v. Commissioner, 497 F.2d 862, 866 (3d Cir. 1974). The fact that no prudent businessman would have loaned Steiner-Trucraft the amount of money advanced by the petitioner under the same terms and conditions is best confirmed by his own testimony. He admitted at trial that Steiner-Trucraft could not have obtained the money which he advanced in 1970 and 1972 from other sources because "we [Steiner-Trucraft, Inc.] were not a viable business that anyone would lend money to at that point." This same condition existed at the time of the second advance in 1972. The impossibility of the debtor corporation to otherwise raise funds has been viewed as an indicia of a contribution to capital rather than a bona fide loan. See Joseph Lupowitz Sons, Inc. v. Commissioner, supra at 866; *554 Hill v. Commissioner, T.C. Memo. 1975-299; Sekulow v. Commissioner, T.C. Memo. 1980-564. Another economic tool used in analyzing debt-equity issues is the "thinness" of the corporation's capital structure as compared to its debt structure. The ratio of debt to equity in a corporation is considered a significant factor bearing on the reasonableness of the expectation of repayment, reflecting the extent of the cushion by which the purported creditors are shielded against the effects of business losses and declines in property values. See Gilbert v. Commissioner, 248 F.2d at 407. As of May 31, 1969, the total liabilities of Steiner-Trucraft were $ 1,288,187, while stockholders' equity was $ 433,802, thereby producing a debt to equity ratio of 2.8 to 1, a generally acceptable ratio. However, by May 31, 1970, Steiner-Trucraft's total liabilities rose to $ 2,684,068, while stockholders' equity declined to a deficit of $ 228,799.57. By August 31, 1972, approximately the time of the second advance, total liabilities of Steiner-Trucraft had risen to $ 2,953,948, while stockholders' equity fell to a deficit of $ 405,964. The courts have *555 approved reclassifications of debt to equity where the debt to equity ratio has approximated 10 to 1. Fin Hay Realty Co. v. Commissioner, 398 F.2d at 698; Fischer v. United States, 441 F. Supp. at 38. Here, when the advances to Steiner-Trucraft were made in 1970 and 1972, the debt to equity ratio approached infinity to one since stockholders' equity was a negative quantity. Given this extreme "thinness" of Steiner-Trucraft's capital structure in 1970 and 1972, a reclassification of the petitioner's advances from debt to equity is similarly warranted. The significance of "thin capitalization" has been particularly stressed where it is combined with subordination to other indebtedness. Tyler v. Tomlinson, 414 F.2d 844, 848 (5th Cir. 1969); Rowan v. United States, 219 F.2d 51, 55 (5th Cir. 1955). Although subordination is not controlling in determining whether advances are bona fide debts, it is an important factor in that determination. P.M. Finance Corporation v. Commissioner, 302 F.2d at 789; *556 Diamond Bros. Company v. Commissioner, 322 F.2d at 732. Both of the petitioner's advances in 1970 and 1972 were subordinated to the claims of unsecured general creditors whose claims arose after May 14, 1970, and to the claims of the unsecured creditors who were parties to the Creditors' Committee Agreement. This subordination is significant with respect to creditors' claims arising after the petitioner's advance since normally his advances, if bona fide loans, would have priority over such claims. This type of complete subordination of claimed pre-existing debt tends to obliterate an important characteristic of the debtor-creditor relationship and, in effect, destroys the power of the creditors to demand payment. P.M. Finance Corporation v. Commissioner, supra at 789-790. The identity of interest between the persons who allegedly loaned money to Steiner-Trucraft in 1970 and 1972 and the shareholders of the corporation also suggests a contribution to a capital rather than a loan. The petitioner was the only person to advance money to Steiner-Trucraft in 1970. Although he only held 28.4 percent of the common stock in 1970, his two brothers, *557 Kyle and Louis Steiner, together held 46.6 percent of the common stock. Thus, the Steiner family held 75 percent of the common stock of Steiner-Trucraft in 1970. In addition, the petitioner's mother, Mollie Steiner, held 80 percent of the preferred stock of the corporation. Petitioner testified that he and his brothers had a lot of control in Steiner-Trucraft prior to his first advance in 1970. He also testified that he asked the "other shareholders" of Steiner-Trucraft in 1970 to obtain the funds necessary to keep the corporation operating. Hence his first advance was closely linked to his stock interest in the company. The 1972 advance was accompanied by advances of $ 48,333 and $ 33,333 by Jerry Luxenberg and Harvey Pollack, respectively. Both, who were originally employees of Steiner-Trucraft, had acquired the common stock of Louis and Kyle Steiner so that by 1972 they held 337 and 200 shares, respectively, of the Steiner-Trucraft common stock. Together, the petitioner, Jerry Luxenberg and Harvey Pollack held 81.4 percent of the common stock in 1972. The amount of funds advanced by each of them also approximated their relative percentage of ownership in Steiner-Trucraft. *558 Where advances are substantially made in proportion to the stock ownership of the stockholders, such fact is a further indication of a contribution to capital rather than a bona fide loan. Gilbert v. Commissioner, 262 F.2d at 513. Petitioner asserts that this case involves a unique factual situation which justifies the conclusion that the advances he made were loans and not capital contributions, and that the facts are clearly distinguishable from each and every case relied upon by the respondent and in which the courts have held that a taxpayer's advance requires treatment as a contribution to capital. He argues in his reply brief that the introduction of the following facts surrounding the May 14, 1970 Agreement with the Creditors is of primary significance: the inability of Petitioners to negotiate a more personally beneficial arrangement; the Petitioners' reliance upon the financial expertise of Saul Hertz as demonstrated several years before under similar circumstances and as demonstrated by the Hertz firm's success in aiding other financially troubled firms to recover; Petitioners' belief that given similar facts as were present when his father faced an *559 identical situation years earlier, he could accomplish a similar result; and finally, Petitioner's belief and understanding that the Creditors Agreement was a sufficient indication of not only the form, but also the substance, of a loan and not a contribution to capital, all support the conclusion that the advances were truly loans, and as a result, upon their worthlessness, Petitioners are entitled to claim a bad debt deduction for the taxable year 1975. We have carefully considered the facts and arguments advanced by the petitioner relating to (1) form, (2) participation, (3) thin capitalization, (4) the intent of the parties, (5) interest, (6) subordination and (7) source of payments. However, we think that a proper analysis of the factors stressed by the petitioner, coupled with those previously discussed herein, leads to the conclusion that the advances were contributions to capital rather than loans. We so hold. Having concluded that the advances were contributions to the capital of Steiner-Trucraft, it is unnecessary for us to decide whether the petitioners are entitled to a business bad debt deduction for the year 1975 and whether they sustained a net operating loss *560 for that year which they are able to carry back to the years 1974, 1973 and 1972, or which the petitioner Norma Steiner can carry forward to the year 1976. Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩
2. The final regulations under section 385, which have not yet become effective, are not applicable to this case.↩